National Agreement. This case does not present the simple question of a laborer who has entered into a fair contract for his personal services.

While the question of the dissolution of this combination on the ground of its illegality is not before this court for decision, it has nevertheless been thought necessary for the purpose of ascertaining whether or not this plaintiff comes into a court of equity with clean hands to inquire into the organization and operations of the combination to which the plaintiff is a party. A court of equity, insisting that "he who comes into equity must come with clean hands," will not lend its aid to promote an unconscionable transaction of the character which the plaintiff is endeavoring to maintain and strengthen by its application for this injunction. The court will not assist in enforcing an agreement which is a part of a general plan having for its object the maintenance of a monopoly, interference with the personal liberty of a citizen, and the control of his free right to labor wherever and for whom he pleases, and will not extend its aid to further the purposes and practices of an unlawful combination, by restraining the defendant from working for any one but the plaintiff. The motion to vacate the preliminary injunction, pendente lite, is therefore granted, with $10 costs to the defendant.

---

(163 App. Div. 870)

### BAINBRIDGE v. HOES.

(Supreme Court, Appellate Division, Second Department. April 10, 1914.)

1. GIFTS (§ 32*)—"GIFT INTER VIVOS"—VALIDITY.

As to constitute a valid gift inter vivos the dominion of the donee over the subject must be complete, the delivery of a check which was neither certified nor accepted by the bank upon which it was drawn does not, in view of Negotiable Instruments Law (Consol. Laws, c. 38) § 325, declaring that a check does not operate as an assignment of any part of the funds to the credit of the drawer and the bank is not liable unless it accepts or certifies the check, constitute a valid gift inter vivos.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 63, 64; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 4, pp. 3091–3093; vol. 8, p. 7671.]

2. GIFTS (§ 32*)—GIFTS INTER VIVOS—CONSIDERATION.

Love and affection which a man may entertain for his betrothed does not constitute a good consideration which will render valid as a gift inter vivos the delivery of an ordinary check upon a bank with which the man had a deposit.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 63, 64; Dec. Dig. § 32.*]

3. BILLS AND NOTES (§ 63*)—DELIVERY—MAILING OF LETTER—EFFECT.

Where a depositor in a bank mails a letter containing a check on his account, the delivery of the letter to the post office is a delivery to the agent of the payee of the check.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 95–103; Dec. Dig. § 63.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. GIFTS (§ 59*)—GIFTS MORTIS CAUSA—VALIDITY.

Where a depositor in a bank drew a check and sent it to his betrothed in contemplation of his suicide, the transaction, if a gift mortis causa, is invalid, Penal Law (Consol. Laws, c. 40) § 2301, declaring self-destruction a grave public wrong, contrary to public policy.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 108; Dec. Dig. § 59.*]

5. GIFTS (§ 66*)—GIFTS MORTIS CAUSA—DELIVERY.

Where a depositor in a bank, in contemplation of his suicide, drew a check in favor of another for substantially the whole of his deposit, the check cannot be considered as an equitable assignment, good as a gift mortis causa.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 135–138; Dec. Dig. § 66.*]

Appeal from Judgment on Report of Referee.

Action by Philip M. Bainbridge against William M. Hoes as administrator of the estate of Leon Guipon, deceased. From a judgment for defendant, plaintiff appeals. Affirmed.

The following is the opinion of the referee referred to by the court:

This action was originally brought against the Produce Exchange Bank of New York on a check hereafter set forth. The bank interpleaded, and the controversy is now between the plaintiff, assignee of the payee, and the personal representative of the drawer, Leon Guipon. Guipon being in New York and being engaged to be married to the plaintiff's assignor, Miss Foster, who lived in Roxbury, Mass., a suburb of Boston, on June 13, 1910, drew his check as follows: "No. 12. New York, June 13, 1910. New York Produce Exchange Bank. Columbus Avenue Branch, N. W. Corner of 93d St. Pay to the order of Miss Agnes Foster, 41 Winthrop Street, Boston, Massachusetts, $7,212.-00/100 seven thousand two hundred and twelve dollars. Through the New York Clearing House. Leon Guipon." The check was inclosed in a letter to the payee, stating in effect, though in more or less euphemistic language, his intention of committing suicide, and that he was sending her the check. The letter was registered and posted in New York on June 14, 1910, and received at the Boston post office on the 15th, and on the evening of the same day delivered to Miss Foster in Boston. On the afternoon of the 14th Guipon was found dead in his studio, a revolver in his hand and a bullet wound in his temple. Though perhaps not fully proved, it may be assumed, as it is apparently conceded by both sides, that Guipon shot himself soon after mailing the letter containing the check. On June 16th, the check was presented at the bank for payment, which was refused. It was indorsed by Miss Foster and handed to her father to present for payment, and was presented as promptly as the circumstances permitted. Mr. Foster demanded payment, and saw the president of the bank, who said he "would be very glad to pay the check," but that Mr. Foster, himself a bank officer, "knew enough about banking law to know that he [the president] could not do anything."

It is assumed by the plaintiff's counsel that this check was for the whole amount of Guipon's balance at the bank; but that is not, strictly speaking, the case. His checkbook (Exhibit 5) contains entries in his handwriting, which make it manifest that after deducting the check in question he had a small balance, which he put down as follows: "Balance forward $0000.88." The check does not on its face purport to be for the entire balance, but specifies the amount in the ordinary way. The plaintiff claims that the circumstances showed a gift of the amount of the check; and of Mr. Guipon's intention to give his betrothed that sum there is not the slightest doubt. The only question is whether the donor executed the transfer in such a manner as the law requires. Plaintiff's counsel contends that: "Guipon did every act possible for a layman to conceive of to perfect and bring about a complete

gift, transfer, and equitable assignment. He cannot have been presumed to have been familiar with the general law regarding checks and their effect." Such considerations, however, are not those by which a referee is permitted to determine the controversy, any more than a surrogate is permitted to apply similar considerations to an unwitnessed will.

[1-3] Whether the question be regarded as one of (1) sufficient delivery of the subject of the gift, or (2) of the legality of the donor's own check as subject-matter of a gift, the result, as I gather from decisions binding upon me, is the same. In either aspect, the gift was not effectual. And this is true whether it be regarded as a donatio inter vivos or mortis causa. To constitute a valid gift inter vivos the dominium of the donee over the subject must be complete. The subject was the money, or the right to the money, in the bank. The check, even if it had been delivered inter præsentes, did not accomplish the purpose. The statute of this state provides that: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Neg. Inst. Law, § 325. This statute only declares the doctrine already settled by the vast preponderance of judicial authority both in England (Hopkinson v. Forster, L. R. 19 Eq. 74, Jessel, M. R.), New York (Union Mills Bk. v. Clark, 134 N. Y. 368, and cases on page 372, 32 N. E. 38, 17 L. R. A. 580), Massachusetts (Bullard v. Randall, 1 Gray, 605, 61 Am. Dec. 433), and the Supreme Court of the United States (Florence Mining Co. v. Brown, 124 U. S. 385, 8 Sup. Ct. 531, 21 L. Ed. 424).

In German Sav. Inst. v. Adae (C. C.) 8 Fed. 106, there was an interpleader by which a bank declared its readiness to pay as the court might order, and it was held that, since there was no controversy as to the rights of the bank or drawee, it did not lie in the mouth of the drawer or of his assignee to say that the check did not amount to an equitable assignment; but that was not a case of gift; the check was not without consideration.

As to gifts of either species the general rule is: "Things in action in which the donor himself is the debtor cannot be the subject-matter of a valid gift. The reason is that, whatever the form, these gifts would amount to nothing more than the donor's own naked executory promise to pay at some further day, without any consideration to support it; and such a voluntary promise cannot be enforced against the donor nor against his executors or administrators." Pomeroy, Equity, § 1148. But the gift may be operative if the check be paid, certified, or accepted before the donor's death. Id., note 2, Pickslay v. Starr, 149 N. Y. 432, 44 N. E. 163, 32 L. R. A. 703, 52 Am. St. Rep. 740.

It may be suggested that the relations existing between donor and donee furnished a "good" consideration, but drafts to a sister (Harris v. Clark, 3 N. Y. 93, 51 Am. Dec. 352), or brother (Re Smither, 30 Hun, 632) have been held to be ineffectual as gifts, though claimed to be supported by the consideration of blood, love, etc. See 3 N. Y. page 96.

To the list of circumstances which may make the check a complete transfer of title to money, given by Pomeroy, must be added: If the banker delays payment to investigate the signature (Bromley v. Brunton, L. R. 6 Eq. 275), where the decision is explained by Buckley, J., as grounded on constructive acceptance (Re Beaumont, 1 Ch. 889 [1902]), or the check has been negotiated for value to a third person in the donor's lifetime (Rolls v. Pearce, 5 Ch. Div. 730). There is no evidence that there was any "constructive payment" or acceptance or agreement to hold the balance, as in Bromley v. Brunton. Mr. Foster says the bank stated no reason for refusing payment. We may conjecture that the bank refused because it thought Guipon's death revoked the check, and it may be that it was mistaken. Glennan v. Rochester, T. & S. Dep. Co., 152 App. Div. 316, 136 N. Y. Supp. 750, citing Daniel's Neg. Inst. (4th Ed.) § 1618B. But assuming both propositions, it refused payment unconditionally, and it did not accept or certify.

I have considered whether the gift could be sustained as one inter vivos because it seemed to me the most favorable view for the plaintiff. The delivery of the letter with the check to the United States post office was clearly a delivery to the donee's agent (Kennedy v. Kennedy Corp., 32 Misc. Rep. 480, 66 N. Y. Supp. 225; Com. v. Wood, 142 Mass. 459, 8 N. E. 432; United

States v. Nutt, 6 Am. Law Rec. 302, Fed. Cas. No. 15,904); and so the fact that the check did not reach Miss Foster till after Guipon's death does not of itself take it out of the class of gifts inter vivos.

[4, 5] If it be concluded that the gift was of the other class (mortis causa), I feel serious doubt of its legality, apart from the questions of delivery and whether a check can be the subject of a valid gift. This doubt has not been inspired by any suggestion from counsel, but it seems to be my duty to state it. Justinian's definition is: "Mortis causa donatio est quæ propter mortis fit suspicionem; cum quis ita donat, si quid humanitus ei contigisset," etc. Inst. title vii. The English and American cases have not permitted donations under such broad terms as the Roman Law (Irish v. Nutting, 47 Barb. 383, 386), but assuming that the common law recognizes a gift "on the conceived near approach of natural death" to include the near approach of death by the donor's own hand, it is still true that the gift becomes effectual only on the contemplated death, and the death and its contemplated means become an essential part of the transaction; and such a death is declared by the Penal Law of New York to be "a grave public wrong." Section 2301. It is true this section continues, "from the impossibility of reaching the successful perpetrator, no forfeiture is imposed," and successful suicide is not made a crime, as it is in English Law. But in Agnew v. Belfast Banking Co., 2 Ir. Q. B. 1896, 204, holding a gift mortis causa, when the donor took her own life, to be void as against public policy, Fitzgibbon, L. J., pointed out that: "The gift is not forfeited, but imperfect; being incomplete till death, you must look to the capacity of the donor at the time of death. If she was insane (when she wrote the letter) the gift fails. If she was sane one must attribute to her the intention of giving effect to the gift by a crime. * * * Her letter (written the same day as delivery of the deposit receipt) proves that the death by her own hand and the gift were the means and end which she contemplated at the same time. It would be against public policy to uphold a gift intended to take effect by means of voluntary self-destruction." And see McCue v. N. W. Mutual, 223 U. S. 234, 32 Sup. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57.

The letter and other facts proved, I think, constitute a gift "propter mortis suspicionem." A bill drawn by a dying man to his wife, stated on its face to be to buy her mourning and maintain her till her jointure became due, was held to be a gift mortis causa. Lawson v. Lawson, 1 P. Wms. 441. A draft sent in a letter, expressing the donor's intention to alter his will, and adding "for fear I should not reach home, as I am very feeble, I will give you an order," etc., was held mortis causa, but not valid. Harris v. Clark, 3 N. Y. 93, 51 Am. Dec. 352.

If Guipon's intended gift was mortis causa, and not void as against public policy, it was invalid. The English cases cited by the plaintiff have been distinguished or overruled in Re Beaumont, supra. In Matter of Taylor's Estate, 154 Pa. 183, 25 Atl. 1061, 18 L. R. A. 855, the check was presented in the donor's lifetime, and payment refused only because of lack of attestation of the drawer's mark, and was then delivered to a third person for value. The reasoning of the court, "wherever the party has the power to do a thing (statutory provisions being out of the way), and means to do it, the instrument he employs shall be so construed as to give effect to his attention," was advanced with great acumen by Mr. Spencer in Harris v. Clark, and was overruled in that case. Besides, statutory provisions seem to stand in the way. Neg. Inst. Law, § 325.

Kurtz v. Smither, 1 Dem. Sur. 399, was reversed by the General Term, Re Smither, supra. That was a case of delivery of a check on its face for the whole amount of the donor's deposit, yet it was decided to be an invalid gift and not an equitable assignment. That is a binding authority for me. "It is no doubt very unfortunate that the intention of the parties should be disappointed; but, though I regret the result, I cannot alter the law." Sir James Bacon, V. C., in Re Beak, 13 Eq. Ca. 489.

Judgment for the defendant.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Almet Reed Latson and Ward W. Pickard, both of New York City, for appellant.

Maurice Leon, of New York City, for respondent.

PER CURIAM. Judgment affirmed, without costs, upon the opinion of William Allaire Shortt, referee. It may be that the plaintiff has some remedy against the administrator upon contract.

---

(85 Misc. Rep. 636)

### In re SMITH'S EX'R.

(Surrogate's Court, Rockland County. May, 1914.)

1. WILLS (§ 16*)—CHARITABLE BEQUESTS—VALIDITY.
   Where a testator died two weeks after making his will, bequests given thereby to charitable societies incorporated under Laws 1848, c. 319, and the acts amendatory thereof, were invalidated by the Decedent Estate Law (Consol. Laws, c. 13) § 19, which provides that a bequest to any such corporation shall be invalid unless the will shall have been executed at least two months prior to testator's death.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 37; Dec. Dig. § 16.*]

2. WILLS (§ 16*)—CHARITABLE BEQUESTS—VALIDITY.
   A bequest to a corporation chartered by special act for charitable purposes and made subject therein to Laws 1848, c. 319, is invalid under Decedent Estate Law (Consol. Laws, c. 13) § 19, where the testator dies less than two months after making his will.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 37; Dec. Dig. § 16.*]

3. WILLS (§ 16*)—CHARITABLE BEQUESTS—VALIDITY—MEMBERSHIP CORPORATIONS.
   Where a charitable association incorporated under Laws 1895, c. 559, relating to membership corporations, was not subject to Laws 1848, c. 319, a bequest to it was not invalid under Decedent Estate Law (Consol. Laws, c. 13) § 19, rendering certain charitable bequests invalid where testator dies less than two months after making his will, though testator died within such time.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 37; Dec. Dig. § 16.*]

4. TAXATION (§ 891*)—TRANSFER TAX—PAYMENT—DESIGNATION BY TESTATOR.
   A testator may legally direct how or from what fund all or part of the transfer taxes to which his estate or any portion thereof may be subjected shall be paid.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1712; Dec. Dig. § 891.*]

5. TAXATION (§ 885*)—TRANSFER TAX—IMPOSITION—PAYMENT.
   Where a will creates a trust fund for the benefit of testator's son for life, with power of disposition by will and also a trust fund for the benefit of his daughter for life, with remainder to her husband and to testator's residuary estate in equal parts, giving the daughter power of disposition by will of the whole trust fund in case she survive her husband, the imposition of taxes on the remainder must be deferred until the death of the respective life beneficiaries.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1706, 1707; Dec. Dig. § 885.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes