[No. 20272. Department One. April 22, 1927.]

W. H. SCOTT, *Respondent*, v. SEABOARD SECURITIES COMPANY, INCORPORATED, *Appellant*, W. G. POWELL et al., *Respondents*.

SEABOARD SECURITIES COMPANY, INCORPORATED, *Appellant*, v. W. H. SCOTT, *Respondent*.[1]

[1] BILLS AND NOTES (20)—PAYMENT (7)—NATURE OF CONTRACT—CASHIER'S CHECK—PAYMENT BY CHECK. A bank cashier's check, drawn by the bank on itself, being in the nature of a promissory note and not subject to countermand, constitutes a valid payment, when delivered and accepted as such, where the payor was in no way responsible for the bank's refusal to honor it.

Appeal from a judgment of the superior court for King county, Hall, J., entered July 12, 1926, upon findings in favor of the respondent, in consolidated actions on contract, tried to the court. Affirmed.

*H. A. P. Myers*, for appellant.

*Rummens & Griffin*, for respondent.

MITCHELL, J.—These two cases, consolidated for trial and appeal, present questions all of which need not be considered in our view of their controlling features.

The Smallwood Motor Company of Seattle by conditional sale contract dated January 2, 1925, sold an automobile to James P. Dugan. He was a salesman for the motor company and the car was to be, and was, used by him in his employment for the purpose of demonstration. The contract was, on the same day, assigned by the motor company to and delivered to the Seaboard Securities Company and by it filed for record in the county auditor's office on January 3, 1925. While Dugan paid nothing, nor was it intended by the parties that he should, the contract on its face provided for twelve monthly payments of $76.28, each commencing

[1]Reported in 255 Pac. 660.

on February 2, 1925. Thereafter monthly payments were made as they became due to the securities company by the motor company including the August payment, leaving $381.40 still owing to the securities company. The September payment not having been made, as claimed by the securities company, it commenced an action in replevin on September 24, 1925, to recover possession of the automobile from W. H. Scott.

In the meantime, the automobile, which was being used by Dugan in his employment with the motor company, was at all times for sale by that company, and on April 17, 1925, that company, through Dugan at the motor company's place of business, sold and delivered it to W. H. Scott, who paid full value for it at that time. Scott had no actual knowledge of the conditional sale contract or the assignment of it, nor did he know that the securities company claimed any right in or to the automobile, nor did he know of the filing for record of the conditional sale contract. Some time in September Scott learned that the securities company claimed to own, or have an interest in, the automobile. Thereupon he brought an action on September 19, 1925, against the securities company and others to have their respective rights adjudicated. This action was commenced, it will be noticed, five days before the commencement of the action in replevin by the securities company against Scott. Scott, in his complaint, and also in his answer to the securities company's complaint, alleged, among other things, that the securities company had been paid in full. That allegation was denied by the securities company. None of the parties demanded a jury trial. Judgment was entered in Scott's favor. The securities company has appealed.

The evidence shows that the appellant demanded payment in full of the balance owing to it by the motor

company on this car. The motor company procured from its bank, American Savings Bank and Trust Company, that bank's cashier's check payable to the order of the appellant in order to pay the balance due on the automobile and another car. The amount was sufficient, and that it should be applied on account of this automobile was noted on the cashier's check. It was mailed to the securities company in the city and by a letter accompanying it the motor company specified it to be in full payment of balance due on this automobile. The president of the securities company admitted on the witness stand the receipt of the cashier's check and that the motor company sent it as payment in full. Referring to the check he testified:

"Q. When you took that check you took it for the purpose of being in full payment of these two contracts? Ans. Yes, sir."

The appellant endorsed the cashier's check and delivered it to its bank, the Seaboard Branch of the Dexter-Horton National Bank, and got credit for the amount of it. Testimony on behalf of the appellant was that its bank charged the amount back on its books against the appellant because payment of the cashier's check was countermanded. The cashier's check as introduced in evidence bears upon its face the words "payment stopped." Why, or at whose instance, those words were stamped on the face of the instrument, or who was responsible for the action attempted according to the import of those words, the record is silent. It is clear from the record, however, that the motor company was in no way responsible for it.

[1] Appellant contends that the result of the transaction did not amount to payment. We cannot approve that contention. The cashier's check was delivered and accepted as payment. Both parties so understood and intended. That the amount of it was sufficient, there is

no controversy. The check was a bank's cashier's check. It was drawn by the bank on itself. It was accepted as soon as issued. The act of making or drawing it of itself constituted an acceptance of it. 11 C. J. 23. It was in the nature of a promissory note, and it is difficult to see how the maker or drawer can countermand the payment of its own obligation of this kind.

In the case of *Drinkall v. Movius State Bank*, 11 N. D. 10, 57 L. R. A. 341, the court said:

"A cashier's check, so called, differs radically from an ordinary check. The latter is merely a bill of exchange drawn by an individual on a bank, payable on demand; or, in other words, it is an order upon a bank purporting to be drawn upon a deposit of funds, for the payment of a certain sum of money to a person named, or to order or bearer, on demand. As between himself and the bank, the drawer of the check has the power of countermanding his order of payment at any time before the bank has paid it, or committed itself to pay it. 5 Am. & Eng. Enc. Law, 2d ed., p. 1079, and cases cited. When the check, however, is certified by the bank, the power of revocation by the drawer ceases, and the bank becomes the debtor. 1 Morse, Banks & Banking, §§ 398, 399. A cashier's check is of an entirely different nature. It is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance; and, of course, the right of countermand, as applied to ordinary checks, does not exist as to it. 2 Randolph, Com. Paper, § 588; 1 Dan. Neg. Inst. 444; 1 Parsons, Notes & Bills, 288. The bank, in such case, is the debtor, and its obligation to pay the cashier's check is like that of the maker of any other negotiable instrument payable on demand. As applied to the case under consideration, the rights and obligations of the plaintiff and defendant as to the cashier's check in question were those of a payee and maker of a negotiable promissory note payable on demand."

Now, in this present case, if the bank did not have the right to countermand or stop payment, certainly

no one else did. We may repeat that the record is silent as to who is responsible for those words on the instrument, but it is clear that the motor company was not.

Considering the character and purpose of such instruments, of which the court of appeals of New York in the case of *Hathaway v. Delaware County*, 185 N. Y. 368, 78 N. E. 153, says:

"That by reason of the peculiar character of cashiers' checks and their general use in the commercial world they were to be regarded substantially as the money which they represented,"

and considering the further fact that, in this case, the check was given and accepted as payment, it must be held, we think, that the respondents' plea of payment against the appellant was established.

Affirmed.

MACKINTOSH, C. J., MAIN, FULLERTON, and FRENCH, JJ., concur.