## Pikeville Nat. Bank & Trust Co. v. Shirley.

Nov. 8, 1939.

Andrew E. Auxier for appellant.

Wells Goodykoontz and Lant R. Slaven for appellee.

William J. Baird amicus curiæ in behalf of creditors of W. W. Gray, bankrupt.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming in part and reversing in part.

Eugene E. Gray, committed suicide at a hotel in Pikeville, Kentucky, sometime during the night of January 13, 1939, and thereafter the Pikeville National Bank & Trust Company was duly appointed and qualified as administrator of his estate and as such brought this action against Mrs. Clara G. Shirley, a sister of decedent, under Section 639a—1 et seq., Civil Code of Practice, for a declaration of rights concerning matters hereinafter set out.

Since the case was submitted upon pleadings and exhibits and the petition attempted to set forth all facts necessary or pertinent to the question involved which were admitted by answer, we shall review at some length the substance of the petition.

Deceased was a bachelor about 60 years of age. He was survived by Mrs. Shirley, a brother, W. W. Gray, and a nephew, Virgil G. Gray, son of a deceased brother, as his only heirs at law. His funeral expenses were paid out of his estate and deceased owed no debts at the time of his death. He had money on deposit in banks in excess of $30,000 and other personal estate worth several thousand dollars and an undivided interest in real estate. He was devoted to his sister with whom he spent considerable time at her home at Greenwood, Virginia, and in the course of years had made gifts of considerable sums to her and her children all of whom in recent years had been dependent upon him for support. He maintained a room in a hotel at Huntington, West Virginia, where he lived for several years and when not with his sister at her home. He was in ill health, being afflicted with a tubercular condition. He was born and spent much of his early life in Pike county, where his father, mother and some of his family lived and where he frequently visited. On January 12, after carefully packing his clothes and personal effects in two trunks which he stored with the hotel, deceased paid his bill and gave up his room at Huntington. He took with him to Pikeville all his notes, bonds, insurance policies, pass books, etc., and upon arriving at the latter place secured a safe deposit box in a local bank and deposited them therein, leaving a memorandum in his own handwriting with reference thereto and with respect to other property of a partnership in which he was a member. He also executed and left a writing stating that it was his wish that his estate be settled by an administrator in Pike County. He had to his credit in a savings account

in the Peoples National Bank of Charleston, West Virginia, a deposit which with accrued interest amounted to $5,126 evidenced by a pass book issued by the bank.

On January 12 and before leaving Huntington, deceased, in his own handwriting, wrote and signed on the page of the pass book where his savings account with the Peoples National Bank was shown the following endorsement:

"Huntington, W. Va. Jan. 1/12/39.

"Peoples National Bank.

"Please make out new book in name of Clara G. Shirley of Greenwood Virginia; with the above $5000.00 with accrued interest in lieu of above, and mail to her.

"E. E. Gray."

This pass book was inclosed with a letter under same date directed to the bank and placed in the mail which excluding signature and formal part reads:

"I am inclosing my savings book with endorsement over to Clara Shirley in book. Please make out new book in her name for $5000.00 and accrued interest and mail to her at Greenwood, Virginia."

This letter was received by the bank on January 14 and it had carried out instructions of deceased, mailed the pass book to Mrs. Shirley as directed and wrote him to that effect before it learned of his death.

In March, 1932, Conrad E. Shirley, former husband of Clara G. Shirley, executed and delivered to deceased a note for $4,000 secured by a mortgage or deed of trust on a farm in Albemarle County, Virginia. Upon separation and divorce of Mrs. Shirley from her husband the latter conveyed the farm to her subject to the lien to secure the $4,000 note with accrued interest.

On January 12, 1939, and before leaving Huntington for Pikeville, deceased in his own handwriting made and affixed his signature to the following endorsement on the back of the note, "Paid in full, January 12, 1939." He enclosed this in a letter directed to Henry D. Goodloe, an attorney at Crozet, Virginia, which letter excluding signature and formal part reads:

"I am enclosing the note and copy of an original mortgage against property of Conrad B. and Clara

G. Shirley and want you to act as Power of Attorney and go to the clerk's office and have the mortgage marked paid and satisfied. You can render your bill for this service to Mrs. Shirley at Greenwood. I wish you would attend to this matter at earliest date."

This letter with the enclosure was received by Goodloe on January 13, and the following day he made the release as directed in the letter, and on the 15th, and before learning of the death of deceased, took the canceled note and mortgage to the home of Mrs. Shirley and delivered it to Mrs. Shirley or to her son for her.

On and prior to January 5, 1939, deceased had on deposit in a checking account in a bank at Huntington a sum of money in excess of $2,000. On that date he made out and signed a check on such account payable to the bank for the sum of $2,000 for which he requested and received a cashier's check on the bank for that sum payable to the order of Clara G. Shirley. On January 12, 1939, and before leaving Huntington he enclosed this check in a letter addressed to Mrs. Shirley at Greenwood and same was received by her at that place before noon on January 13, 1939. On the morning of January 14 and before receiving information of the death of deceased, Mrs. Shirley endorsed the check and mailed same to a bank at Charlottsville to be credited to her account which the bank did.

It was alleged in the petition that controversy had arisen between Mrs. Shirley and the bank as administrator as to whether the three transactions above set out constituted valid gifts to her of the subject matter involved, or whether they were assets of the estate, and a declaration of the rights of the parties with respect thereto was asked.

The court adjudged Clara G. Shirley to be the owner of $5,126 evidenced by savings account in the bank of Charlottsville, $2,000 evidenced by cashier's check of the Huntington bank and the canceled mortgage note for $4,000 executed by Conrad Shirley to deceased as gifts made and delivered by decedent to her and which were accepted by her and legally executed and completed; that the plaintiff's petition be dismissed and it take nothing thereby. It is appealing.

The lower court did not undertake in his opinion or judgment to determine the character of the gifts, that

is, whether they were gifts inter vivos or gifts causa mortis. Manifestly none of these transactions could be upheld as gifts causa mortis because vital and necessary elements are lacking, one of which is that such gifts must be made in expectation of imminent death from a disease or peril then impending. Dickerson .v. Snyder, 209 Ky. 212, 272 S. W. 384 and authorities therein cited. While it is alleged in the petition and admitted by answer that decedent was afflicted with tuberculosis, he did not die of that disease, but came to his death by self-destruction which the record indicates he had contemplated and determined upon several days before he carried his determined purpose into effect. Normal men are the arbiters of their own fate so far as suicide is concerned, since that is a matter within their own power of control. But not so with disease or dangers and risk to which they may be exposed by surgical operations or like perils. We find no authority to indicate that apprehension of death by contemplated suicide is such imminent peril as would uphold a gift causa mortis. On the contrary, there is authority indicating otherwise.

In 28 C. J. 689, it is said:

"A gift made in contemplation of death to be effected by suicide is not valid as a gift causa mortis, not only because the intent to commit suicide may be abandoned, but also a gift so made is against public policy." See also Bainbridge v. Hoes, 163 App. Div. 870, 149 N. Y. S. 20.

It will thus be seen that our consideration is limited to determining whether the three transactions constituted valid gifts inter vivos. It is not denied, and in the circumstances revealed by the record it cannot be doubted, that decedent intended to make gifts of the subject matter of these transactions to his sister but in order to make them valid as gifts inter vivos it was necessary that there should be a delivery whereby the donor gave up dominion and control over the subject matter of the gifts and placed same in the donee during their lives. To constitute such a gift the property must be delivered absolutely and the gift go into immediate unconditional effect. If future control over the property remain in the donor until his death there was no valid gift inter vivos. It is absolutely essential to the validity of such gifts that there should be a delivery to the donee whereby the thing given should immediately pass and be

irrevocable by the donor. Stark v. Kelley, 132 Ky. 376, 113 S. W. 498; Brewer's Adm'r v. Brewer, 181 Ky. 400, 205 S. W. 393; Foxworthy v. Adams, 136 Ky. 403, 124 S. W. 381, 27 L. R. A., N. S., 308, Ann. Cas. 1912A, 327; Taylor v. Purdy, 151 Ky. 82, 151 S. W. 45. This court in harmony with the general trend of authority has consistently held that the delivery need not actually be made to the donee but may be made to another as agent or trustee for him. Goodan v. Goodan, 184 Ky. 79, 211 S. W. 423; Farris v. Farris, 269 Ky. 466, 107 S. W. (2d) 299, 303. A third person to whom property is delivered with instructions to give it to the donee is presumed to take it as trustee for him. Williams v. Letton, 228 Ky. 371, 15 S. W .(2d) 296. While the delivery of the gift inter vivos may be actual, symbolical, or constructive, in either event there must be the parting of dominion over the property included in the gift from the donor and placing it with the donee. Kelley-Koett Manufacutring Company v. Goldenberg, 207 Ky. 695, 270 S. W. 15. Unquestionably the letter and the enclosed pass book with directions respecting change in the account, etc., were not delivered to the bank until after the death of appellant's decedent.

Argument is made on behalf of appellee that the placing of this letter in the mail by decedent was an effective and complete delivery to the bank as trustee of appellee when the letter was posted. Strange to say that in all that has been written concerning gifts no case has been cited and an extensive research of authorities has revealed none directly in point. Counsel for appellee cite cases to support argument that a deposit of an insurance policy in the mail constituted delivery of the policy to the insured; and there are cases relating to sales contracts, holding in effect that where a proposal is made by writing or telegraphing, an acceptance placed in the mail or with the telegraph company immediately becomes effective, so far as the sender of the proposal is concerned, but clearly those cases are not in point. In the case of Commonwealth Life Insurance Company v. McGuire, 190 Ky. 134, 226 S. W. 402, 403, it appears that a policy contract had been issued and mailed to the local agent of the insurance company for the insured. It was held in effect that the delivery to the agent for the insured was a delivery to the insurer, and in the course of the opinion it was said:

"* * * the moment the agent at Owensboro re-

157

ceived this contract there was a delivery of the same to the insured in contemplation of law.''

No question of proposal or acceptance under contract is involved in this instance but decedent was attempting to make a voluntary transfer of his property to his sister without consideration and in order to effect that purpose it was necessary that the gift should go into immediate effect and be beyond his control or right of revocation. It is a matter of common knowledge that under postal regulations the sender of a letter may by proper application to postal authorities have same delivered back to him at any time before it is delivered by the postal authorities to the addressee. Since the letter was not received by the bank until after the death of Mr. Gray, we are constrained to hold there was no delivery before that event and therefore not a valid gift inter vivos of the money on saving deposit. In passing we might add that this transaction cannot be enforced as a declaration of trust by the donor since, as has been held by this court, ''*  *  * A gift of the equitable or beneficial title must be complete and effectual in the case of a trust as is the gift of the thing itself in a gift inter vivos.'' Frazier v. Hudson, 279 Ky. 334, 130 S. W. (2d) 809, 811, 123 A. L. R. 1331, and cases therein cited.

All the essential elements of a gift inter vivos attended the transfer of the canceled mortgage note to appellee. The delivery was completed when the letter containing the canceled note was received by the attorney who was directed under authority contained in the letter to make a release of the mortgage and deliver the note to appellee. Delivery to the attorney as agent or trustee for appellee was a delivery to her and was effective even though she knew nothing of it until after the death of the donor. In the absence of such knowledge before the death of the donor there can be no actual acceptance of the gift by her but in such circumstances and where the gift is beneficial to the donee acceptance will be presumed.

The transfer of the cashier's check for $2,000 may also be upheld as a valid gift inter vivos. An ordinary check is generally considered by courts as merely a promise to pay. The gift of such a check is not completed until it is paid or accepted by the drawee (28 C. J. 661); however, a cashier's check is entirely different from the ordinary check.

"It is issued by the authorized officer of a bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Cashier's checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent. * * *" 7 Am. Jur. 379. See, also, 9 C. J. 381.

The delivery of the cashier's check to appellee had the same effect as a delivery of the cash itself which it represented. Whether the issuance by the bank of the cashier's check in favor of appellee would have amounted to delivery we need not determine because the check was actually delivered before the death of the donor.

For the reasons indicated the judgment is affirmed in part and reversed in part for proceedings and judgment in conformity with this opinion.

Whole Court sitting.