HOWARD FOREMAN, Plaintiff-Appellee, *v.* JOSEPH MARTIN, Defendant-Appellant—(THE BANK OF WAUKEGAN, Defendant-Appellee.)

(No. 71-99; ▮▮▮▮▮▮▮▮▮▮)

Second District—July 27, 1972.

Ronald E. Griesheimer and Stephen E. Thompson, both of Waukegan, for appellant.

Charles L. Whyte and William G. Rosing, both of Waukegan, for appellees.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

This case was commenced when Howard Foreman filed a complaint for a declaratory judgment against Joseph Martin and the Bank of Waukegan asking that the court find that Martin had no legal claim to a certain cashier's check issued by the Bank and seeking an injunction to prevent payment of the check to him. At the conclusion of the trial, the court entered an order that found that Foreman was the lawful owner of the check and that Martin had no interest in it. Martin has prosecuted this appeal from that order but only the Bank of Waukegan has appeared in this Court.

It appears from the record that Howard Foreman is a man of many business enterprises including the sale and leasing of "Mr. Scrub" car wash machines pursuant to a franchise obtained in 1967 from the manufacturer. In October, 1969, Foreman met with Martin, with whom he had previous business dealings, to discuss his car wash franchise. Foreman sought Martin's aid in placing the machines on the Great Lakes Naval Training Center since Martin had, for many years, been in the Navy and stationed at Great Lakes.

In December, 1969, Foreman again contacted Martin and advised him that he had an opportunity to place a "Mr. Scrub" machine in a new service station owned by a Herb Green in Waukegan if the necessary financing could be obtained. Martin agreed to help to seek a suitable investor for the machine and the two men did thereafter meet with at least two potential investors known to Martin. They also met with

Green, known previously by both Foreman and Martin, and the three entered into a lease agreement prepared by Foreman and dated January 2, 1970. That agreement recited that the lessor, described as "For-Mar Leasing Co", would place a machine at Green's station and the profits derived from its operation would be divided equally. Both Foreman and Martin signed the agreement as the lessors. Thereafter, Foreman and Martin continued to seek, unsuccessfully, for an investor for the machine to be placed at Green's station.

On February 3, 1970, Martin went to Texas because of a death in his family and after his return about 10 days later noticed that a "Mr. Scrub" had been installed at Green's station. Foreman refused, however, to inform Martin where the financing for the machine had been obtained.

During the week previous to Saturday, May 11, 1970, Foreman visited the Bank of Waukegan and applied for a loan in the amount of $8,000.00 so that he could buy out the interest of his partner in the "Mr. Scrub" at Green's station. Foreman testified that he had at first financed the machine through a personal loan from his bank in Wisconsin but that a John Hale later invested $8,000.00 in the enterprise. Hale encountered other difficulties and when he sought a return of his investment, Foreman agreed to seek a bank loan to buy him out. On May 11, Foreman returned to the Bank to obtain the loan when a Mr. Renschen, a vice president at the Bank, asked him for a copy of the lease agreement, Foreman inadvertently pulled the lease with Martin from his briefcase. Renschen took the lease and told his secretary to prepare a cashier's check in the amount of $8,000.00 payable to Joseph Martin. Foreman realized, so he testified, that the check should have been payable to Hale, not Martin, but did not want to jeopardize his loan by causing any additional confusion. The check was thus prepared, payable to Martin, with a restrictive endorsement on the reverse side reading "For full and final payment of your interest in one TS-45A 'Mr. Scrub' emanuel car wash machine complete, located at Herb Green's Sinclair Station, Greenbay and Belvidere Roads, Waukegan, Illinois, as well as your interests in the lease pertaining thereto with the For-Mar Leasing Company dated January 2, 1970."

Foreman took the check to Martin on that day and asked him to endorse the check and return it to him which Martin refused to do, according to Foreman, because of his concern over the tax consequence. Foreman returned to Martin on Monday with the check together with a bill of sale to be executed by Martin for all interest in the machine and lease. Again Martin refused to sign the check and give it to Foreman and, when Foreman was diverted by a telephone call, Martin took the

check and went to the Bank to cash it. While a teller was gathering $8,000 to cash the check, Foreman came into the Bank and directed them not to pay it. At Renschen's direction, the check was stamped "Payment Stopped" and Martin given, instead of $8,000, a receipt.

■■ The Bank agrees, that under normal circumstances, a cashier's check cannot be countermanded. It has been held that the "* * * legal effect of a cashier's check issued by a bank is the same as a bill of exchange drawn by the bank upon itself and accepted in advance by the act of its issuance, and is not subject to countermand like any ordinary check." (*Madison & K. State Bank v. Madison Square State Bank*, 271 Ill.App. 12, 18.) The Bank contends, however, that in some circumstances a cashier's check should be subject to countermandment, like a certified check, where the issuance is a result of error or fraud and the rights of no other party have intervened. A certified check is, of course, not the same as a cashier's check since it is not a check drawn by a bank upon itself but is merely a certification that the drawer of the check has sufficient funds on deposit in the bank to cover payment of the check. There are no cases to the effect that a cashier's check can be countermanded. (*Acme Excavating Co. v. State Bank of Breese*, 69 Ill.App.2d 280.) In the *Madison & K. State Bank* case, cited above, an employee of a bank fraudulently caused the issuance of 9 cashier's checks payable to a fictitious payee to cover his gambling debts. The checks were endorsed and deposited in the usual course with the defendant bank and collected through normal. clearing house procedures. The court held that the cashier's checks were valid and not subject to any defenses available to the bank of issuance. The court stated "If the rule were otherwise, the receipt of a cashier's check would require the holder to ascertain whether the issuing bank had a defense. This would retard business and it would always be a question as to the advisability of the acceptance of a cashier's check". *Madison & K. State Bank v. Madison Square State Bank*, 271 Ill. App. 12, 19.

■■ Even if we were to accept the contention of the Bank, however, it is difficult to perceive how the issuance of the check came about as a result of either error or fraud. The Bank clearly intended to draw a check payable to Martin on the basis of the lease agreement furnished by Foreman. Martin presented the check for payment and made, as far as the record discloses, no misrepresentations to anyone. Foreman, as we have said, did not see fit to file a.brief or appearance before us in this cause. Under these circumstances, we can only conclude that the Bank had no right to stop payment to the named payee on the cashier's check issued by it and that the order of the trial court was in error.

In view of our decision, we have not considered the other points raised in the brief. The order of the lower court will be reversed and the cause remanded with directions that the Bank be ordered to make payment in accordance with this decision.

Reversed and remanded.

SEIDENFELD, P. J., and GUILD, J., concur.