[No. 51053-9.   En Banc.   June 5, 1986.]

FREDRICK W. CRUNK, ET AL, *Respondents,* v. STATE FARM FIRE AND CASUALTY COMPANY, *Petitioner.*

24

*Reed, McClure, Moceri & Thonn, P.S.*, by *William R. Hickman, Karen A. Southworth,* and *Heather Houston Reeve*, for petitioner.

*Baker, Lane & Rothschild*, by *John P. Rothschild*, for respondents.

CALLOW, J.—State Farm Fire and Casualty Company petitions for review of the holding of the Court of Appeals reported as *Crunk v. State Farm Fire & Cas. Co.*, 38 Wn. App. 501, 686 P.2d 1132 (1984). The insurer asserts that the homeowner's policy involved was unambiguous and that a cashier's check constitutes "money" within the terms of a special limit of liability provision in the policy.

Fredrick and Alice Crunk were insured under a homeowner's policy issued by State Farm. They entered into a contract with George K. Wright, d/b/a G & G Construction Company, for a $37,769.62 remodeling job on their home. The Crunks secured a cashier's check for $18,884.91 from a bank, endorsed it and gave it to the contractor on July 8, 1981, as the initial payment on the home improvements the contractor was to make under the contract. The contractor cashed the check and departed for sunny climes. He was arrested later in Florida and returned to King County for trial where in December 1981 he pleaded guilty to the first degree theft of the cashier's check stating that:

> from November 1980 and July 1981, I was working as a building contractor. I had several jobs: Fellhauer, Crunk, Pearsons and Persons. I got behind in the Fellhauer job and then everything snowballed. I tried to catch up and I couldn't. I used the money from one job for another job in hopes of catching up. I used money advanced to me by the Crunks and Persons for purposes other than the work I was hired to do and never started their work.

The insured presented a claim to the insurer under coverage B of the homeowner's policy. Coverage was provided under the provisions of the policy which read in pertinent part:

Coverage B—UNSCHEDULED PERSONAL PROPERTY.

This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an Insured, while on the described premises and, at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.

This coverage also includes such unscheduled personal property while elsewhere than on the described premises, anywhere in the world:

(1) owned or used by an Insured; or

(2) at the option of the Named Insured;

    (a) owned by a guest while in a residence occupied by an Insured; or

    (b) owned by a residence employee while actually engaged in the service of an Insured and while such property is in the physical custody of such residence employee or in a residence occupied by an Insured;

(3) but the limit of this Company's liability for the unscheduled personal property away from the premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage B, but in no event less than $1000.

PERILS INSURED AGAINST

Coverage B—Unscheduled personal property against direct loss to the property covered by the following perils as defined and limited, except as otherwise excluded:

. . .

10. Theft, meaning any act of stealing or attempt thereat, including loss of property from a known place under circumstances when a probability of theft exists.

. . .

SPECIAL LIMITS OF LIABILITY

. . .

b. Under Coverage B, this company shall not be liable for loss in any one occurrence with respect to the following property for more than:

    (1) $100 in the aggregate on money, bullion, numismatic property and bank notes;

    (2) $500 in the aggregate on securities, accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, railroad

and other tickets or stamps, including philatelic property;

The following issues are before us: (1) whether the acts of the contractor constitute theft as defined in the policy, and (2) whether a cashier's check is money, a bank note or an evidence of debt under the special limits of liability clause contained in the policy.

■ An ordinary check is a bill of exchange drawn by an individual on a bank, payable on demand. It is an order upon a bank purporting to be drawn upon a deposit of funds for the payment of a sum certain to a person named or to order or bearer on demand. The drawer of the ordinary check has the power of countermanding his order for payment at any time before the bank has paid it or committed itself to pay it. A cashier's check differs in that it is a bill of exchange drawn by the bank upon itself and is accepted by the act of issuance. A cashier's check is the primary obligation of the remitting bank. *See* RCW 62A.4–211(1)(b). The right to countermand as applied to ordinary checks does not exist as to cashier's checks. *Drinkall v. Movius State Bank,* 11 N.D. 10, 88 N.W. 724 (1901). An ordinary check is considered as merely a promise to pay, but a cashier's check is regarded substantially as money, which it represents. The gift of such a check is completed upon delivery of the check. *Pikeville Nat'l Bank & Trust Co. v. Shirley,* 281 Ky. 150, 135 S.W.2d 426, 126 A.L.R. 919 (1939). *See also Scott v. Seaboard Sec. Co.,* 143 Wash. 514, 255 P. 660 (1927), which quoted with approval extensively from *Drinkall,* and then quoted from *Hathaway v. Delaware Cy.,* 185 N.Y. 368, 78 N.E. 153 (1906) as follows:

"That by reason of the peculiar character of cashiers' checks and their general use in the commercial world *they were to be regarded substantially as the money which they represented,*"

(Italics ours.) *Scott,* at 518. *See also Duke v. Johnson,* 127 Wash. 601, 221 P. 321 (1923); *Bunge Corp. v. Manufacturers Hanover Trust Co.,* 65 Misc. 2d 829, 318 N.Y.S.2d 819 (1971); *Foreman v. Martin,* 6 Ill. App. 3d 599, 286 N.E.2d 80 (1972). As stated in 10 Am. Jur. 2d *Banks* § 544, at 518–

19 (1963):

Issuance and nature of cashiers' checks.

A cashier's check is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance. While the only apparent basic or factual difference between a cashier's check and the ordinary check is that the ordinary check is drawn on one other than the drawer, while in a cashier's check both the drawer and the drawee are the same, there are certain differences, some radical, in the incidents and consequences of the two types of checks. A cashier's check is a primary obligation of the bank, rather than the depositor, as in the case of an ordinary check, and a promise to pay which ordinarily cannot be countermanded. It is issued by the authorized officer of a bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Cashiers' checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent, a rule that is not extended to ordinary checks of the depositor drawn on his bank.

(Footnotes omitted.)

In the understanding that a cashier's check generally, and under Washington law in particular, is treated the same as money, we inquire as to the way in which the contractor converted $18,884.91 of the Crunks' funds to his own use. First of all, he acquired it from them legally, and it was their intent to deliver it to him. Secondly, it is apparent that he cashed the check and then, by his own statement, he spent the money and other moneys in his possession and never did the work he was to do for the Crunks under their remodeling contract. We must inquire whether the insurance policy covers the Crunks' loss.

The intent of the parties to an insurance policy is determined by considering the entire policy as a whole and giving effect to each clause in the policy. *Neer v. Fireman's Fund Am. Life Ins. Co.,* 103 Wn.2d 316, 692 P.2d 830 (1985) (citing *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 484, 687 P.2d 1139 (1984); *Morgan v. Pruden-*

*tial Ins. Co. of Am.,* 86 Wn.2d 432, 545 P.2d 1193 (1976)). "The question is one solely of law", *Rew v. Beneficial Standard Life Ins. Co.,* 41 Wn.2d 577, 581, 250 P.2d 956, 35 A.L.R.2d 891 (1952). The matter being solely an issue of law and the interpretation of an insurance policy which is before us and there being no disagreement as to the facts, we are in as good a position as the lower courts to ascertain the extent of coverage, if any, under the policy.

In 7A J. Appleman, *Insurance* § 4501.02, at 255 (1979), we find:

> The personal comprehensive liability policy occasionally is sold separately but it most frequently is found as a part of a package fire or home policy, popularly known as the homeowners' policy. This type of coverage is simply a combination of the many property and liability coverages desired by the average person. It is comparatively low in cost, and is primarily a non–business and non–automobile policy. The court will take cognizance of the intent and reasonable expectation of the parties in entering into the insurance contract.

(Footnote omitted.) 13A G. Couch, *Insurance* § 48.143, at 143 (2d ed. 1982) states:

> Notwithstanding the presence of an "all–risks" provision in an insurance policy, the loss will not be covered if it comes within any specific exclusion contained in the policy.

As we read the policy, it insured personal property on or off the premises with certain restrictions against theft but with the limitation of liability to $100 with respect to money and bank notes. As we read the entire policy in the light of the limitation of liability set forth, we hold that it was not the intent of the contract nor could it be the understanding of the parties that coverage was to be provided for more than $100 when something as liquid and subject to misapplication as a cashier's check was involved. The funds were surrendered to the contractor for a legitimate purpose. Under the law, the surrender of the cashier's check was the same as if the insured had handed the contractor $18,884.91 in cash. Under the policy provisions the

maximum liability for loss to such property is limited to $100. The insured is entitled to $100. The policy controls.

The decision of the Court of Appeals and the judgment of the Superior Court are reversed.

DOLLIVER, C.J., and CUNNINGHAM and WIELAND, JJ. Pro Tem., concur.

GOODLOE, J. (concurring)—I concur in the majority's result, but feel compelled to write separately for several reasons.

First, the majority states two issues are presented: "(1) whether the acts of the contractor constitute theft as defined in the policy, and (2) whether a cashier's check is money, a bank note or an evidence of debt under the special limits of liability clause contained in the policy." Majority opinion, at 26. State Farm Fire and Casualty Company appealed only one issue to this court. State Farm did not appeal the Court of Appeals determination that the act of the contractor constituted theft. The majority never analyzes whether the contractor's acts constituted theft. Because the issue was not appealed, I express no opinion as to whether a theft occurred. My decision presumes that the Court of Appeals was correct in determining that the prerequisite of theft was met.

Second, I would phrase the issue that is before us as whether any of the policy's special limits of liability apply. The limits will only apply if a cashier's check is found to meet one of the terms. I agree with the majority that in Washington, a cashier's check is treated the same as money. Therefore, I agree with the majority that recovery under the policy is limited to $100.

Third, I wish to note specifically that while I do not find the term "money" ambiguous in this case, I, like the dissent, do not adopt the rule of law proposed by the Court of Appeals. The Court of Appeals said: "An ambiguity exists when there is a difference of opinion among courts of different jurisdictions with respect to the construction of

terms in insurance policies." *Crunk v. State Farm Fire & Cas. Co.,* 38 Wn. App. 501, 508, 686 P.2d 1132 (1984). The language has been subsequently quoted. *Sayan v. United Servs. Auto. Ass'n,* 43 Wn. App. 148, 154, 716 P.2d 895 (1986). I do not wish the majority's failure to address this language specifically to indicate implicit approval of it.

UTTER, BRACHTENBACH, and PEARSON, JJ., concur with GOODLOE, J.

DORE, J. (dissenting)—The majority characterizes a cashier's check as the same as money, and therefore reduces the plaintiffs' recovery pursuant to a liability limitation in their homeowner's policy. I disagree and, like the Court of Appeals, believe the trial court award of $18,884.91 is correct. Nevertheless, although I would reach the same result as the Court of Appeals, I would do so for different reasons.

George Wright pleaded guilty to first degree theft for misappropriating a cashier's check the Crunks gave him to remodel their house. The Crunks had a homeowner's policy which insured against theft, and the Court of Appeals held that Wright's thievery was covered by the policy. *Crunk v. State Farm Fire & Cas. Co.,* 38 Wn. App. 501, 506, 686 P.2d 1132 (1984). State Farm did not raise this issue on appeal, so this court need only consider whether the policy liability limitation of $100 for theft of money or bank notes applies to this cashier's check. RAP 13.7(b).

The majority cites to a substantial body of law stating that, for commercial purposes, a cashier's check is the functional equivalent of money. This is undoubtedly true. However, this case does not involve what parties would believe the meaning of a cashier's check is in the sophisticated commercial context. Rather, this court should construe the insurance policy in the way an average person purchasing insurance would understand it. Furthermore, exclusionary clauses, such as a limitation on liability, should be construed strictly against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 659

P.2d 509 (1983), *modified,* 101 Wn.2d 830, 683 P.2d 186 (1984). Accordingly, the issue before this court is whether an individual purchasing this insurance would believe that he or she is in the same position if someone steals his or her cashier's check as opposed to the same value in cash.

I believe that people generally view those thefts as different, and that they believe they have some recourse, such as notifying the bank, if the cashier's check is taken. Furthermore, while the majority cites 10 Am. Jur. 2d *Banks* § 544 (1963) to support its proposition that in the commercial context, a cashier's check is synonymous with money, the same section also states: "Cashiers' checks . . . are also frequently taken out by parties who desire to have the money represented by the check in that form rather than to carry cash . . ." People obviously view cashier's checks as different from money.

Finally, the policy limits liability for both theft of "money" and of "bank notes". A "bank note" is a technical term denoting a bank's promissory note. It is valid for an indefinite period, and is used as currency in certain European countries. *See Crunk,* at 508. Therefore, bank notes have more characteristics of money than do cashier's checks, yet the policy treats bank notes as different from money. As the Court of Appeals pointed out, "If State Farm had intended that cashier's checks would constitute money simply because the two share certain functional characteristics, there would have been no need to list bank notes separately." *Crunk,* at 509 n.5.

I agree therefore with the result the Court of Appeals reached, although I disagree with a rule of law that that court proposed. The Court of Appeals stated: "An ambiguity exists when there is a difference of opinion among courts of different jurisdictions with respect to the construction of terms in insurance policies." *Crunk,* at 508. While some other jurisdictions have adopted this rule, the rule in this state has never allowed other courts in other states to determine whether an ambiguity exists. For example in *Truck Ins. Exch. v. Rohde,* 49 Wn.2d 465, 303 P.2d

659, 55 A.L.R.2d 1288 (1956) and *Grange Ins. Ass'n v. MacKenzie,* 103 Wn.2d 708, 694 P.2d 1087 (1985) this court has found terms in insurance policies unambiguous even though other jurisdictions have differed as to the terms' meanings. To do otherwise would mean whenever two reasonable courts disagreed on the interpretation of a term in an insurance policy, the insured would prevail.

## CONCLUSION

I believe the subject policy is ambiguous as to whether a cashier's check is money. As this ambiguity appears in an exclusionary clause, I would construe the policy in favor of the insured. I would uphold the Court of Appeals decision affirming the trial court's order in favor of the Crunks for $18,884.91.