[No. 27936-7-III.   Division Three.   March 2, 2010.]

ROCKY GREENFIELD, *Appellant*, v. WESTERN HERITAGE INSURANCE COMPANY, *Respondent*.

*Richard C. Feltman* (of *Feltman Gebhardt Greer & Zeimantz PS*), for appellant.

*Randall R. Adams* (of *Carey Perkins LLP*), for respondent.

¶1 BROWN, A.C.J. — Rocky Greenfield, d/b/a G&G Liquidation and Auction Company, appeals the summary dismissal of his breach of contract and consumer protection suit against his insurer, Western Heritage Insurance Company. Mr. Greenfield contends the trial court erred in rejecting his theft coverage claim arising from the loss of funds flowing from the consignment sale of Mr. Greenfield's truck to Ron Medlen. The truck's resale proceeds were lost when Mr. Medlen's bank seized his business checking account. Mr. Medlen then declared bankruptcy. Like the trial court, we find no ambiguity in the contract language, reject Mr. Greenfield's theft and conversion arguments, and affirm.

## FACTS

¶2 Mr. Greenfield owns G&G Liquidation and Auction Company, a wholesale motor vehicle dealership. Western insures G&G under a "Commercial Garage Policy." In the "Physical Damage Coverage" section, the policy states Western will cover loss caused by "theft." Clerk's Papers (CP) at 24. In a separate section relating to coverage for loss or damage to a customer's vehicle left on G&G's property, the policy states, " 'Loss' due to theft or conversion" caused by G&G or its employees is not covered. CP at 24. The policy does not define the terms "theft" or "conversion."

¶3 In April 2005, Mr. Greenfield provided a 2001 Dodge pickup truck to Mr. Medlen, owner of Silverauto Sales, on consignment. The parties agreed Mr. Medlen would pay Mr. Greenfield $15,000 after selling the truck and Mr. Greenfield delivering title. Silverauto later sold the truck for $16,550. Mr. Medlen's bookkeeper deposited the custom-

er's check into Silverauto's bank account at American West Bank. Soon after, and before Mr. Greenfield could deliver title and be paid the $15,000 owed by Mr. Medlen, American West froze Silverauto's bank account. Mr. Medlen informed Mr. Greenfield about the account. Mr. Medlen deposed that he did not intend to deprive Mr. Greenfield of the vehicle without paying for it. Mr. Medlen later filed a chapter 7 bankruptcy under the Bankruptcy Code. Mr. Greenfield remained unpaid.

¶4 Western denied Mr. Greenfield's coverage claim. Mr. Greenfield then sued Western for declaratory judgment, breach of contract, and violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. On cross motions for summary judgment, the trial court granted Western's request, concluding no coverage existed under Mr. Greenfield's policy for the claimed loss. Mr. Greenfield appealed.

## ANALYSIS

¶5 The issue is whether the trial court erred in granting Western's summary judgment motion and dismissing Mr. Greenfield's declaratory suit for insurance coverage and CPA violation. Mr. Greenfield mainly contends his truck loss resulted from a covered theft based on commingled funds. Alternatively, he asserts the policy is ambiguous and, therefore, should be read in favor of coverage.

¶6 We perform the same inquiries as the trial court when reviewing summary judgments. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). We review

de novo summary judgment insurance coverage questions. *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 702, 981 P.2d 872 (1999) (citing *Hillhaven Props. Ltd. v. Sellen Constr. Co.*, 133 Wn.2d 751, 757, 948 P.2d 796 (1997)).

■ ¶7 We construe an insurance policy as a whole, "giving [it] 'a fair, reasonable, and sensible construction.'" *S&K Motors, Inc. v. Harco Nat'l Ins. Co.*, 151 Wn. App. 633, 639, 213 P.3d 630 (2009) (internal quotation marks omitted) (quoting *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 693, 186 P.3d 1188 (2008), *review denied*, 165 Wn.2d 1035 (2009)). "Insurance policies are construed liberally, in order to provide coverage whenever possible." *Id.* Defined terms should be interpreted in accordance with the policy definition, while undefined terms are interpreted according to their ordinary meanings. *Id.*

■ ■ ¶8 The underlying question here is if Mr. Greenfield's policy covers the loss of consignment sale proceeds. Unquestionably, the vehicle was not stolen; rather, Mr. Greenfield lost the opportunity to collect the consignment sale proceeds from the funds Mr. Medlen placed in his business bank account when Mr. Medlen's bank froze those funds. The funds were frozen before Mr. Greenfield had the opportunity to tender the truck's title to Mr. Medlen in exchange for payment. While Mr. Greenfield may be able to trace the truck-sale funds to Mr. Medlen's frozen business account, it appears that he was no more than an unsecured creditor in Mr. Medlen's liquidating bankruptcy.

¶9 Mr. Greenfield purchased a "Commercial Garage Policy" to provide coverage for his company's vehicles. CP at 8. Under the "Physical Damage Coverage" section, the policy states that Western will cover loss caused by such incidents as fire, windstorm, flood, vandalism, and theft "to a covered 'auto.'" CP at 168. By its plain language, the policy provides coverage for physical damage "to" an automobile. As Western correctly points out, Mr. Greenfield has

filed a claim for lost proceeds not for physical damage "to" a vehicle. The policy language does not provide coverage for the loss he claims.

¶10  Mr. Greenfield incorrectly argues Mr. Medlen's actions in depositing the vehicle's payment in his business account resulted in a theft based on commingling of funds, violating RCW 46.70.028. Initially, Western contends we should not consider this argument because it is raised for the first time on appeal. *See* RAP 2.5(a) ("court may refuse to review any claim of error which was not raised in the trial court"). While Mr. Greenfield did not cite to chapter 46.70 RCW below, he nevertheless argued in his pleadings that Mr. Medlen failed to deposit the proceeds from the sale of the truck into a trust account for Mr. Greenfield's benefit. This is sufficient to preserve this issue for review.

¶11  Under chapter 46.70 RCW, the auto dealer practices act (ADPA), "Dealers who transact dealer business by consignment . . . shall place all funds received from the sale of the consigned vehicle in a trust account until the sale is completed." RCW 46.70.028. Failure to place funds in a trust account creates a right of action under RCW 46.70-.027. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 722, 225 P.3d 266 (2009). Thus, Mr. Greenfield's remedy would be under the ADPA.

¶12  Even assuming RCW 46.70.028 could be relied upon to establish theft under an insurance policy, reasonable minds could reach but one conclusion: Mr. Greenfield fails to establish intent. " '[W]here the terms "theft" or "larceny" are used in the grant of coverage in an . . . insurance policy, but are not clearly defined or limited, they . . . should be interpreted broadly to include a loss caused by *any unlawful or wrongful taking . . . with criminal intent.*' " *Crunk v. State Farm Fire & Cas. Co.*, 38 Wn. App. 501, 505, 686 P.2d 1132 (1984) (some alterations in original) (quoting *Almadova v. State Farm Mut. Auto. Ins. Co.*, 133 Ariz. 81, 649 P.2d 284, 287 (1982)), *rev'd on other grounds*, 106 Wn.2d 23, 719 P.2d 1338 (1986).

¶13 Here, Mr. Greenfield fails to show Mr. Medlen's intent to unlawfully or wrongfully take the truck. Instead, Mr. Greenfield consigned the truck to Mr. Medlen. Mr. Medlen deposed that he did not intend to deprive Mr. Greenfield of payment. Mr. Medlen did as contemplated; he sold the truck to a third party. Before the consignment sale could be completed, Mr. Medlen's bank, another creditor, intervened by freezing all the funds in Mr. Medlen's business account, including the third-party sale funds. Mr. Greenfield's recourse for Mr. Medlen's failure to utilize a trust account is through a civil suit or ADPA action against Mr. Medlen (though there may be no remedy due to the bankruptcy proceedings), not an insurance claim. The trial court properly found Mr. Medlen's actions did not amount to a theft under the insurance policy.

¶14 Mr. Greenfield next argues the policy is ambiguous regarding theft and conversion. Ambiguities in an insurance policy "are construed in favor of the insured." *S&K Motors*, 151 Wn. App. at 640. We have already rejected Mr. Greenfield's theft arguments. "Conversion" does not require wrongful intent. *In re Marriage of Langham*, 153 Wn.2d 553, 560, 106 P.3d 212 (2005). But, the portion of the policy relied upon by Mr. Greenfield provides coverage for theft, not conversion. Conversion is discussed in a separate section relating to coverage for loss or damage to a customer's vehicle left on G&G's property. No ambiguity exists. And, we cannot, under the guise of finding an ambiguity, rewrite an insurance policy to provide coverage where the plain language of the policy does not provide coverage. *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wn.2d 129, 133, 994 P.2d 833 (2000).

¶15 In sum, the trial court properly found Western's policy did not cover the loss of proceeds from a failed consignment sale and therefore did not err. Having so held, we do not reach Mr. Greenfield's attorney fee arguments under *Olympic Steamship Co. v. Centennial Insurance Co.*,

117 Wn.2d 37, 811 P.2d 673 (1991). Western, as the prevailing party, is entitled to costs under RAP 14.2.

¶16 Affirmed.

SWEENEY and KORSMO, JJ., concur.