Irving Smith, J.
The attorneys for plaintiff and defendant have indicated that this is a case of first impression.
The facts having been agreed to by the parties: (1) that there was in effect a valid policy of insurance commonly referred to as a theft insurance policy, issued by the defendant, Commercial Union Insurance Company of New York, to the plaintiff, Ramon Be Biase, to insure his residence at 126 East 62nd Street, Borough of Manhattan, City of New York, to the extent of $1,900; (2) that a theft of the plaintiff’s premises occurred on September 7, 1964, while the policy was in effect, which occasioned a loss of $775 in clothing, luggage and damage to the premises, and a loss of the plaintiff’s collection of United States coins having a face value of approximately $400 and a numismatic value to collectors of coins of $1,787; (3) the question remaining for the court is to determine whether the policy of insurance covers the numismatic value of the coins and thus permits the plaintiff to recover the full amount of the insurance issued, $1,900; or, that the policy of insurance does not cover the numismatic value of the coins and thereby limit plaintiff’s recovery for the loss of the coins to the sum of $100 for money insured under the policy.
This court must therefore determine whether “ coins ”, as an item of collection, are a separate and distinct entity apart from money in its common usage.
In a monetary sense, coin was the sacred currency of the ancient world. (Thayer v. Hedges, 22 Ind. 282, 304.) In modern times, when generally used without any prefix, it means metallic money of all types (Commonwealth v. Gallagher, 16 Gray [82 Mass.] 240, 241), or more specifically, a piece of gold or silver, or other metal, stamped by authority of the government, in order to fix its value, and commonly termed money. (Gregory v. *46 Morris, 96 U. S. 619, 625; Latham v. United States, 1 Ct. Cl. 149, 152.) ‘ 1 Money is a generic and comprehensive term. It is not a synonym of coin. It includes coin, but is not confined to it. It includes whatever is lawfully and actually current in buying and selling, of the value and as the equivalent of coin.” (Klauber v. Biggerstaff, 47 Wis. 551, 557.)
In the New York case of Matter of Minniss (200 Misc. 353) the executors of the last will and testament of the decedent requested the construction by the court of certain paragraphs of the last will of the decedent. The question there was whether decedent intended to bequeath as “personal effects” : stock, bonds, cash, a coin collection, firearms and a draftsman’s drawing set. The court held (p. 354) “ that the testator meant to include as his personal effects only those articles of personalty which he held as a source of personal comfort and enjoyment. He meant to include his coin collection and his firearms and did not mean to include any stock, bonds, cash or any other type of property ’ ’.
“ Coin ” differs from “ money ” as the species differs from the genus. ‘ ‘ Money ’ ’ is any matter, whether metal, paper, beads, shells, rocks, etc., which has currency as a medium in commerce. But “coin” is a particular species always made of metal and struck according to a certain process called “ coining”. (Borie v. Trott, 5 Phila. 366, 403, quoting Wharton’s Law Lexicon.)
That there is a generally recognized difference between the word “coin” and the word “money” seems to be indicated by the Federal Constitution, statutes and cases.. (Emery Bird Thayer Dry Goods Co. v. Williams, 98 F. 2d 166, 171.) Money, being a word which is not always used in the same sense with an absolutely definite, unvarying, and fixed meaning in each instance the true meaning of the word must be sought, and in each instance no hard and certain rule may be applied. (Frauenfelder v. State ex rel. La Prade, 45 Ariz. 183; Campbell v. St. Joseph’s Ind. School, 30 Del. Ch. 84; Wright v. Guilmette, 94 Vt. 372; Salt Lake County v. Utah Copper Co., 93 F. 2d 127,131,132.) For in each instance the use of the word “money” is to be interpreted from the surrounding circumstances under which it was used.
Nonetheless, if some broad use of the word “ money” is to be acknowledged, it is as any commodity having a means of exchange, as sheep, wampum, copper rings, quills of salt, shovel blades, tobacco or gold, etc. By itself then, money is but a device having value between those who use it. Money is, in some countries, a mere commodity bought and sold in the market, and *47 its value fluctuates in the market like that of other commodities. (Richard v. American Union Bank, 253 N. Y. 166.)
In New York and elsewhere, foreign money or rare or misprinted money or coin is a commodity of fluctuating market value dependent upon the principles of supply and demand. Economically, the essential and natural functions of “money” are recognized as being: (1) a commodity having a value of its own; (2) a common measure of value; (3) as having a general ex-changeability and (4) as having a general medium of exchange. (United States v. Gellman, 44 F. Supp. 360, 365.)
Thus, it can be said that money is not an article of commerce, but is merely a medium of exchange. ‘ ‘ Coins ’ ’ therefore, removed from circulation as a medium of exchange and collected and saved by a numismatist concerned with their commercial numismatic value, establishes those “coins” as articles of commerce. (Republic Acceptance Corp. v. Bennett, 220 Mich. 249.)
The plaintiff, as has been stipulated by the parties, collected coins as a hobby. He is or was a numismatist. The stolen coins were not intended to be used as a medium of exchange. The stolen coins were secreted away in the plaintiff’s residence, separated from whatever “ money ” and “ coin ” the plaintiff kept at home as currency to use as a medium of exchange. The coins were not thought of as currency by the plaintiff, but were thought of as a commodity, a valuable commodity. The plaintiff could have sold his coins and received therefor an amount in considerable excess of any face value they might have represented as a medium of exchange.
The defendant, insurer, drafted this contract of insurance unilaterally, and any and all meanings, definitions and explanations of terms are to be literally and strictly construed against the drawer of the instrument. The contract of insurance limits liability for loss of money to $100; and defines “money” to mean currency, coins, bank notes and bullion. But its intent perceived from the definition is for “money” to mean a medium of exchange, and not as an article of commerce. ‘ ‘ Money ’ ’ has been said to include whatever is lawfully and actually current in buying and selling of the value and for the equivalent of coin. State v. Quackenbush, 108 N. Y. 953, 955. The coins stolen from the plaintiff’s residence were not “ coins ” regarded as currency. (Borie v. Trott, supra.)
It is generally recognized that there are dealers in rare or unusual coins, and it is similarly accepted that there are people who save, collect, invest in and sell rare coins either as a hobby or for financial gain. Numismatists are no longer a rarity.
*48 Although a stamp collector could place a rare five-cent stamp on an envelope and make use of it for postage and a coin collector could use two three-legged buffalo nickels to purchase a newspaper, neither the philatelist nor the numismatist will use a rare stamp or a rare coin, respectively, for such purpose. The numismatist takes the rare coin out of circulation as a means of currency, and philatelist takes the rare stamp out of use. They become commodities. They are articles of commerce.
The rare coins are no longer “money”, as the policy of insurance defines “money”. The coins were among the personal effects of the plaintiff. (Matter of Minniss, supra.)
The coverage in the policy is therefore not limited to the sum of $100. The coins are covered as personal property of the plaintiff, and the defendant is liable for the full extent of the coverage, $1,900.