LASSER, P.J.T.C.
As a result of an audit of his businesses by the Division of Taxation, plaintiff filed a complaint seeking a declaratory judgment (pursuant to N.J.S.A. 2A:16-52) that sales of gold coins and gold and silver bullion are exempt from New Jersey sales and use tax.
The following facts were stipulated by the parties:
1. Plaintiff is the sole shareholder of Collector’s Exchange, Ltd. and sole proprietor of the Princeton Coin Exchange, both located in Mercer County. These businesses engage in the purchase and sale of foreign currency, stamps, gold and silver bullion, coins and jewelry. They deal primarily with the public, but Collectors Exchange, Ltd. also transacts business with precious metal dealers.
2. It is conceded that sales of numismatic (collector) coins are subject to the sales tax. Numismatic coins are sold at prices based on their condition, rarity and historical value rather than the value of their metal content. The sale of such coins is not a matter of dispute in this action. The types of gold coins which are the subject of this action are:
a. American Arts gold medallions issued by the United States Government through the United States Postal Authority.
b. Krugerrands issued by the South African Government.
c. Mapleleafs issued by the Canadian Government.
d. Coronas issued by the Austrian Government.
e. Pesos issued by the Mexican Government.
f. Sovereigns issued by the British Government.
*121 American Arts gold medallions are not legal tender and have no face value stated on them. Krugerrands are legal tender with no face value; they are trade coins not for circulation in South Africa. Canadian mapleleafs are legal tender with a face value of $50. Austrian coronas and Mexican pesos are restrikes of coins formerly recognized as legal tender. The British gold sovereign is an original issue coin.
3. Coins and bullion provide an avenue of investment in precious metals for an investor with limited capital. Plaintiff’s business enterprises purchase and sell these gold coins based on the value of their metal content. The sale price of gold and silver bullion and gold coins is determined by current quotations on the international commodities markets. A brokerage commission of mh is added to the market price of the metal to arrive at the selling price. Plaintiff does not maintain an inventory of coins and bullion. He orders them from representatives of the issuing governments and from Engelhard, Inc. based on customers’ purchases.
4. It was further stipulated that it is the policy of the Division of Taxation that retail sales of gold and silver bullion and United States and foreign coins priced by metal content (rather than face value) are sales of tangible personal property subject to sales tax. The State Tax News, Vol. 3, No. 4 (August-September 1974) stated that receipts from sales to investors of bags of silver coins and bullion and gold coins are deemed to be sales of tangible personal property subject to the New Jersey sales tax. It is the position of the Division of Taxation that American Arts gold medallions are not taxable when sold by the United States Postal Authority because of constitutional limitations on the right of the states to tax the Federal Government. However, sales of American Arts gold medallions, when offered for sale by a dealer such as plaintiff, are taxable as sales of tangible personal property. It is the policy of the Division of Taxation that sales of gold and silver are exempt under N.J.S.A. 54:32B 8.32 when sold in fulfillment of a futures contract entered into in accordance with the rules of a licensed contract market and only when gold and silver is *122 placed in storage, not when converted to use by the purchaser. “Converted to use” is defined by the Division of Taxation as “the taking of physical possession of the gold or silver by the purchaser.”
The parties also submitted a copy of the Legislative Statement attached to Senate Bill 1448.[1] This statement recites that the purpose of the bill is to enlarge the § 8.32 exemption to include sales of gold and silver in any form.
In addition to the foregoing stipulated facts, testimony was presented by plaintiff, who detailed his business practices, his understanding of the sales tax and his discussions with the taxing authorities, and by a coin collector who testified to his experience as a purchaser of coins.
Plaintiff conceded that, in addition to numismatic coins, a krugerrand bracelet or other coins in the form of jewelry are taxable.
Plaintiff contends that sales of gold and silver bullion and gold coins are not subject to tax by the State of New Jersey for the following reasons: (1) gold and silver bullion and gold coins are not tangible personal property within the meaning of the Sales and Use Tax Act but are intangible media of exchange; (2) sales of gold coins and gold and silver bullion are exempt from New Jersey sales tax under N.J.S.A. 54:32B-8.32; (3) the Commerce Clause of the United States Constitution prohibits state taxation of gold coins or bullion because Congress has exclusive jurisdiction to regulate commerce With foreign nations, and gold is intimately connected with such commerce; (4) the Supremacy and Monetary Clauses of the United States Constitution prohibit the states from taxing legal and nonlegal tender, gold and silver coins and gold and silver bullion; (5) the United States Constitution gives Congress exclusive power to control and regulate monetary affairs and prohibits interference by the states; (6) the General Agreement on Tariffs and Trade *123 (GATT), under its most favored nation principle, prohibits the taxation of gold and silver coins or bullion by the State of New Jersey and (7) the Division of Taxation is estopped from collecting tax on these sales because plaintiff did not have notice that these sales were taxable.
The Director argues that retail sales of gold and silver bullion and coins priced according to their metal content are sales of tangible personal property subject to sales and use tax under N.J.S.A. 54:32B-1 et seq., and are not exempt futures contracts.
I
The New Jersey sales and use tax is imposed on receipts from every retail sale of tangible personal property not specifically exempted. N.J.S.A. 54:32B-3(a). “Tangible personal property” is defined as “corporeal personal property of any nature.” N.J.S.A. 54:32B-2(g). Corporeal property is defined as “such things as have an objective, material existence; perceptible by the senses of sight and touch; possessing a real body.” Black’s Law Dictionary (5 ed. 1979), 310.
From the description of his businesses provided by plaintiff, it is clear that the subject transactions are over-the-counter retail sales to the consuming public. At issue is whether sales of gold coins, such as krugerrands, and gold and silver bullion are taxable as retail sales of tangible personal property.
It cannot be contended that gold and silver in bullion form are intangible personal property. I find that gold and silver in bullion form are tangible personal property.
The subject gold coins can be likened to numismatic coins sold to coin collectors. Numismatic coins were held to be subject to sales tax in Losana Corp. v. Porterfield, 14 Ohio St.2d 42, 236 N.E.2d 535 (Sup.Ct.1968). The court, quoting the Ohio Board of Tax Appeals, stated:
The coins which were stock in trade of appellant are not comparable to money which is deposited in a bank wherein a debtor creditor relationship with the bank and depositor is created. Conversely the coins herein are specific coins, retained by appellant as an inventory or stock in trade in a business and as such are tangible personal property, [at 537]
*124 See DeBiase v. Commercial Union Ins. Co. of N.Y., 53 Misc.2d 45, 278 N.Y.S.2d 145 (Civ.Ct.1967), aff’d, 55 Misc.2d 676, 286 N.Y.S.2d 502 (App.Div.1967).
Like numismatic coins, gold coins and bullion are sold at prices based on market factors of supply and demand. In both cases the sale is of tangible personal property, a commodity. This is true whether or not the coins are legal tender, have a stated face value, are an original issue or a restrike.
The Michigan Tax Tribunal, in Michigan Nat’l Bank v. Michigan Dep’t of Treasury, MTTR (1982), All St. Sales Tax Rep. (CCH) § 10-858 (April 13,1982), held the sale of krugerrands to be subject to the Michigan sales tax because the intention of the purchasers was to possess krugerrands as an investment in tangible personal property rather than as legal tender of the Republic of South Africa.
Sales tax regulations of many states recognize the distinction between coins used as a medium of exchange and those purchased for the value of their metal content. New York Sales and Use Tax Act, Regulation § 527.1(c); Alabama Sales & Use Tax Rule G 27-936; Washington State Excise Tax Bulletin, No. 493.08.102; Indiana Sales Tax Circular ST 96; Colorado Sales & Use Tax Reg. 7; Arizona Transaction & Use Tax Regulation R. 15-5-1852; Iowa Sales & Use Tax Rule 730-15.18; Nevada Sales & Use Tax Ruling 74; Texas Sales & Use Tax Rule 026.02.20.056.
New York State imposes a sales tax on the retail sale of tangible personal property. Section 526.8(a) of the New York Sales Tax Regulations defines tangible personal property to include:
... (6) coins and other numismatic items, when purchased for purposes other than for use as a medium of exchange; .. .
(8) precious metals in the form of bullion, ingots, wafers and other forms.
Section 527.1(c) further distinguishes between taxable and nontaxable sales of coins as follows:
*125 (3) Where coins or other currency of one nation are exchanged for coins or other currency of another nation in the open market, the exchange rate reflects actual currency value, and the coins or other currency are in general circulation, the transaction is a financial transaction and not a sale of tangible personal property and is therefore not subject to sales tax.
(4) Where a coin, such as a rare coin or commemorative coin, which is legal tender, but is either not in general circulation, or is purchased at a rate not reflecting actual currency value or at a value determined by the precious metal content of the coin, such purchase shall be deemed to be for numismatic, coin collecting or investment purposes and is a sale of tangible personal property subject to sales tax.
The New Jersey sales tax was in large part derived from the New York sales tax. N.J. Bell Tel. Co. v. Taxation Div. Director, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977). The New York regulations interpreting its sales tax with respect to gold coins are consistent with the interpretation of the New Jersey Sales Tax Act by the New Jersey Director of the Division of Taxation.
Plaintiff has cited Smith v. Department of Revenue, 376 So.2d 421 (Fla.App.1979), in which the Florida sales tax was held not to apply to foreign coins such as the krugerrand. The Florida Sales Tax Act specifically defines “money” as nontaxable, intangible personal property. Fla.Stat. § 212.05 (1977). In Smith v. Department of Revenue, the Florida court followed the Florida Sales Tax Act and held that “money,” whether or not used as a medium of exchange, was nontaxable. Unlike the Florida statute, the New Jersey statute does not define “money.” The Smith case is thus distinguishable.
For New Jersey sales tax purposes it is the use to which the coin is put that is controlling. The subject coins and bullion are sold for the value of their metal content, which fluctuates with the international metals market. When used as a vehicle for investment in precious metals, a coin is tangible personal property. When used as a medium of exchange, a coin has an exchange value not related to its metal content and is intangible personal property not subject to sales tax.
A Canadian mapleleaf is minted in a one-ounce weight. It has a face value of $50. If the price of gold is $300 an ounce, a mapleleaf will sell for approximately $300, not $50. The sale *126 price is determined by the value of the coin’s metal content, not by its face value or its status as legal tender. Plaintiff testified that the popularity of krugerrands was attributable to the fact that they are “exactly one troy ounce.” It is apparent that the coin is purchased because it is one troy ounce of gold in a convenient and reliable form. Although the property purchased is in coin form, it is purchased for the metal and is tangible personal property.
I conclude that the subject coins and bullion are tangible personal property like other commodities and that their sale is taxable unless they are specifically exempted under the Sales and Use Tax Act, or taxation is proscribed by the United States Constitution or General Agreement on- Tariffs and Trade (GATT).
II
I must now determine whether the subject coins and bullion are exempt from taxation under the New Jersey Sales and Use Tax Act. The only section of the act cited by plaintiff as granting such exemption is N.J.S.A. 54:32B-8.32, which provides:
Receipts from the sales of gold or silver and storage thereof, in the form traded on any contract market or other board of trade or exchange licensed by the Federal Commodity Futures Trading Commission as defined in the Commodity Exchange Act, as amended are exempt from the tax imposed under the Sales and Use Tax Act; provided that the sale shall have been in fulfillment of the obligations of a contract for future delivery of gold or silver, or an option to purchase or sell such commodity, entered into on and in accordance with the rules of such licensed contract or options market; provided further that this exemption shall not apply with respect to any gold or silver subsequently converted to use by a purchaser and in such event, such purchaser shall be liable for the sales and use tax imposed thereunder.
Sales of gold or silver are exempt from tax when all of the following conditions have been met:
1. They are in the form traded on a contract market licensed by the Federal Commodity Futures Trading Commission.
2. They are received in fulfillment of a futures contract entered into on and in accordance with the rules of a .licensed contract market.
3. They are not subsequently converted to use by the purchaser.
*127 Plaintiff states that his customers pay for the coins or bullion based on the commodity market price at the time of the order. He places the order with his suppliers, who deliver the coins or bullion to his store. He then makes delivery to his customers. Plaintiff contends that this is a future delivery within the meaning of the act’s exemption.
Futures contracts are sales of commodities for future delivery. The seller wishes to establish a fixed price for a commodity, anticipating that the price will decline. The purchaser hopes that the price will increase. Those who speculate in commodity futures do not expect to make or take delivery of the commodity. They trade in the hope that they can make another trade at a profit before the contract expires and delivery must be made. Describing the commodity futures market, The Investor’s Dictionary (1964) states:
The commodity futures market is not a market in which to invest-that is, to make a purchase and hold it for a considerable time in the hope of a reasonable profit. It is not even a market in commodities themselves but rather in commodity futures contracts, which are contracts to buy and sell future crops of commodities, not trading of actual commodities in the present, [at 100]
The Commodity Futures Exchange Act of 1974, 7 U.S.C.A. § 2 (1981), sets forth definitions of terms used in the act. This section provides in part that “The term ‘future delivery’ shall not include any sale of any cash commodity for deferred shipment or delivery.” The term “cash commodity” is not defined in the statute, but the distinction between a contract for future delivery and a cash commodity for deferred delivery was discussed in Commodity Futures Trading Comm’n v. Co-Petro Marketing Group, Inc., 502 F.Supp. 806, 815-816 (C.D.Cal.1980), aff’d 680 F.2d 573 (9 Cir.1982). The Co-Petro court interpreted cash commodity deferred delivery contracts as entailing “not only the legal obligation to perform, but also the generally fulfilled expectation that the contract will lead to an exchange of commodities for money. In contrast, parties to a futures contract do not usually expect delivery and it rarely occurs.” Id. at 813, quoting In Re Stovall, Commodity Futures Law Reports 23,775 at 23,778. See, also, Cargill, Inc. v. Hardin, 452 F.2d 1154 (8 Cir.1971), cert. den. sub nom. Cargill, Inc. v. Butz, 406 U.S. 932, 92 S.Ct. 1770, 32 L.Ed.2d 135 (1972).
*128 The Co-Petro court also noted that a House Committee Report explained the difference between what it termed a “cash forward contract” and a futures contract. The report stated that a cash forward contract i§ a “cash contract in which the merchandise is not to be delivered immediately but on an agreed upon future date,” and further added that the seller in a cash forward contract “might not even have the commodity at the time the contract is entered into but contracts with the good faith belief that he can acquire the commodity in time to deliver.” Co-Petro at 812, quoting House Committee Report No. 98-975, Comm.Fut. L.Rep. (CCH) 1047 at 1047-1048.
Clearly, § 8.32, taken as a whole, exempts “futures contracts,” not over-the-counter sales of gold coins and bullion where delivery of the metals is expected and occurs. The subject transactions may come within the definition of a cash commodity or cash forward contract, but not a futures contract. Plaintiff sells gold coins and bullion. He does not trade in futures contracts.
The statute also denies sales tax exemption if gold or silver traded pursuant to a futures contract is “subsequently converted to use by a purchaser.” This language indicates the intention of the Legislature to narrowly limit the exemption to the “paper” futures transaction. This interpretation is confirmed by the statement to the bill to exempt gold and silver futures contract transactions, Senate Bill 3319, introduced June 20, 1977 and enacted as N.J.S.A. 54:32B-8(ff):[2]
This bill would exempt from the New Jersey Sales and Use Tax Act the sale of gold or silver by a person engaged in a business as a dealer in such metals provided that the seller is a dealer who is a member of a national securities association registered with the Securities and Exchange Commission. The exemption would apply only if the trading takes place in this State and the gold or silver is held in storage in this State and is not subsequently converted to use by a purchaser. The purchasers of the gold would never actually take possession of the gold or silver... Thus legislation would help to promote and expand brokerage operations of this nature with New Jersey. [Statement of Senate Revenue, Finance and Appropriations Committee, July 11, 1977]
*129 The Commodity Futures Exchange Act of 1974 requires a person who deals in futures contracts to be licensed. Dealing in futures contracts for others when unlicensed is unlawful. 7 U.S.C.A. § 6h. The sales tax exemption is limited to futures transactions in the form traded on a licensed market and in accordance with the rules of such market. Plaintiff testified that he is not licensed to deal in futures contracts by the Commodity Futures Trading Commission. There is no evidence that plaintiff is a member of a national securities association registered with the Commodity Futures Trading Commission. There is no evidence that the over-the-counter coin and bullion transactions in which plaintiff engages are in the form traded on a licensed commodity exchange or are futures contracts within the meaning and intent of the statute. Therefore I find that plaintiff has failed to carry the burden of persuading the court that his transactions are within the purview of N.J.S.A. 54:32B-8.32.
To assure that the public burden of taxation is justly and equally shared, statutes granting exemption are to be strictly construed against those seeking exemption. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). I conclude that the subject gold coins and bullion are not sold in fulfillment of a commodity futures contract within the meaning of the Commodity Futures Exchange Act of 1974 and are not exempt under N.J.S.A. 54:32B-8.32.
Ill
Plaintiff argues that imposition of the New Jersey sales tax on the sale of gold coins and gold and silver bullion is proscribed by the United States Constitution. His argument is based on federal supremacy in both the regulation of foreign commerce and in the coinage of money.
The Commerce Clause (Art. I, § 8, cl. 3) grants Congress the power to regulate commerce with foreign nations and among the several states. Plaintiff cites the case of Japan Lines, Ltd. v. County of Los Angeles, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d *130 336 (1979), to support his argument that the subject tax is an invalid interference with foreign commerce. In Japan Lines the court held that the United States Constitution barred California from imposing a property tax on Japanese ships and cargo containers used in international commerce. However, Japan Lines, Ltd. involved state taxation of the instrumentalities of foreign commerce. In that case the court found that the ships and cargo containers, were in an area of foreign commerce “where a uniform federal rule is essential,” and held that the ships and cargo containers could not be taxed by the State of California. There is established precedent for holding that transportation equipment falls within an area in which federal uniformity is required. See Pullman’s Palace Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891); Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); Braniff Airways, Inc. v. Nebraska State Bd. of Equalization, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954). This court has not been referred to a similar case recognizing gold coins or gold and silver bullion as instrumentalities of commerce which require federal uniformity and preclude state taxation.
In Michelin Tires Corp. v. Wages, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976), reh. den. 424 U.S. 935, 96 S.Ct. 1151, 47 L.Ed.2d 344 (1976), the court was presented with the question of whether tires imported from France were subject to nondiscriminatory ad valorem property taxation upon their arrival in the State of Georgia. The court held that the tires, stacked on wooden pallets for sale and delivery to franchise dealers within the state, were no longer in transit and had become part of the distributor’s inventory. Although Michelin dealt with the Import-Export Clause, not the Commerce Clause, the court’s reasoning supports the taxability of foreign goods which have acquired a tax situs in the taxing state.
The court observed that nondiscriminatory state taxation is the quid pro quo for benefits conferred by the state to goods no longer in import transit. 423 U.S. at 288-289, 96 S.Ct. at 542-43.
*131 The subject gold coins and gold and silver bullion are no longer in transit when they arrive at plaintiff’s store. They are not then in foreign commerce nor are they instrumentalities of foreign commerce. The New Jersey sales tax is imposed on all retail sales of tangible personal property and does not discriminate against either foreign commerce or imported goods. When delivered to plaintiff’s store the coins and bullion become subject to taxation by the State of New Jersey. Michelin Tire Corp. v. Wages, supra; Wiloil Corp. v. Pennsylvania, 294 U.S. 169, 55 S.Ct. 358, 79 L.Ed. 838 (1935), reh. den. 294 U.S. 733, 55 S.Ct. 543, 79 L.Ed. 1262 (1935).
Plaintiff also contends that Art. I, § 8, cl.5 of the United States Constitution prohibits taxation in this case. This clause grants Congress exclusive power to “Coin Money, regulate the value thereof, and of foreign Coin.” Plaintiff argues that imposition of the sales tax on sales of coins and bullion constitutes regulation of the value of money by New Jersey. The subject coins and bullion are not money within the meaning of this clause. They are not intangibles used as a medium of exchange. They are commodities subject to the laws of supply and demand. Imposition of the sales tax in this case does not violate the United States Constitution. The State of New Jersey is not attempting to “coin money” or “regulate the value thereof.” It is merely uniformly taxing tangible personal property which has lawfully entered the state for sale.
Plaintiff argues that since 1975 the United States Government has permitted gold to be traded freely by United States citizens. He contends that since gold is and always has been intimately connected with domestic and international commerce, only Congress may regulate it. However, at the present time Congress has not preempted the field and therefore individual states are free to tax sales of gold coins or bullion without violating the United States Constitution. This court has held that state legislation should not be set aside unless the court finds that federal legislation in the same area permits no other conclusion than that the Congress has unmistakably ordained that the field is preempted. Chicago & N.W. Tr. Co. v. Kalo *132 Brick & Tile, 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981); Exxon Corp. v. Hunt, 4 N.J.Tax 294, 305 (Tax Ct.1982). See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
I conclude that the imposition of New Jersey sales tax on gold coins and gold and silver bullion does not violate the Supremacy, Monetary or Foreign Commerce Clauses of the United States Constitution.
IV
Plaintiff also contends that the subject tax is prohibited by the General Agreement on Tariffs and Trade (GATT), October 30, 1947, 61 Stat. A3, T.I.A.S. No. 1700, 55 U.N.T.S. 187 (as amended December 14,1948). GATT is an executive agreement entered into by the President acting under his constitutional power to conduct foreign affairs, having the force of an international treaty. Jackson, “The General Agreement on Tariffs and Trade in the United States Domestic Law,” 66 Mich.L.Rev. 249, 312 (1967). The purpose of GATT is to reduce tariffs and other barriers to trade and to foster international commerce. Plaintiff contends that the New Jersey sales tax violates the most-favored nation principle of Article I and the national treatment principle of Article III, par. 2 of the Agreement. Article I, par. 1 of the Agreement states:
... any advantage, favour, privilege or immunity granted by any contracting party to any product originating in or destined for any other country shall be accorded immediately and unconditionally to the like product originating in or destined for the territories of all other contracting parties.
Article III, paragraphs 1 and 2 state:
1. The contracting parties recognize that internal taxes and other internal charges, and laws, regulations and requirements affecting the internal sale, offering for sale, purchase, transportation, distribution or use of products, and internal quantitative regulations requiring the mixture, processing or use of products in specified amounts or proportions, should not be applied to imported or domestic products so as to afford protection to domestic production.
2. The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or *133 indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products. Moreover, no contracting party shall otherwise apply internal taxes or other internal charges to imported or domestic products in a manner contrary to the principles set forth in paragraph 1.
Article I relates to customs duties at the time of importation of the product and is not directly applicable to the subject case. The national treatment principle of Article III relates to restrictions imposed after imports have entered a country. There is some question as to whether GATT is binding on the states since the states are not signatories to the Agreement. Article XXIV, par. 12 provides that: “Every contracting party shall take such reasonable measures as may be available to it to ensure observance of the provisions of this Agreement by the regional and local governments and authorities within its territories.” Some have taken the position that this clause recognized that signatory governments following the federal system might not be able to limit the authority of their government subdivisions and that this provision constituted a “best efforts” clause where total compliance by the signatory was not possible. See Jackson, supra at 302.
Assuming that the states are bound by the provisions of GATT, imposition of the New Jersey sales and use tax on sales of gold coins and gold and silver bullion does not discriminate against sales of products of a signatory nation because the New Jersey Sales and Use Tax Act imposes the sales tax on every sale of gold or silver regardless of the country of origin. Similarly, the futures contract exemption applies uniformly without regard to country of origin. It is clear that the statute on its face does not violate GATT.
However, plaintiff argues that the statute is discriminatory as applied. He points to the tax result of sales of American Arts gold medallions. These medallions are not taxed by New Jersey when sold by the United States Government through the United States Postal Authority, but they are taxed by New Jersey when sold in New Jersey by a coin dealer. Plaintiff contends that New Jersey’s failure to tax sales of all gold coins is violative of GATT.
*134 Under our federal system the State of New Jersey is without authority to tax federal instrumentalities. Smith v. Davis, 323 U.S. 111, 65 S.Ct. 157, 89 L.Ed. 107 (1944). To the extent that New Jersey has the power to impose sales tax on sales of gold coins and gold and silver bullion, it does so uniformly. The fact that American Arts gold medallions are subject to sales tax when sold by a dealer makes it clear that it is not the intent of the New Jersey Sales and Use Tax Act to “afford protection to domestic production.” There is no proof that the exemption of sales of American Arts gold medallions by the United States Postal Authority has the effect of discouraging the importation of the foreign coins that are the subject of this action. There is no evidence of the volume of American Arts gold medallions sold by the United States Postal Authority in the State of New Jersey. Therefore, the effect of New Jersey’s inability to tax a federal instrumentality cannot be measured and may very well be de minimis.
There is no evidence that the New Jersey sales tax discriminates against imported gold or silver bullion.
Plaintiff has not proved that the sales tax discriminates against foreign products in violation of GATT.
I conclude that plaintiff has not established that the imposition of New Jersey sales tax on plaintiff’s sales of gold coins and gold and silver bullion violates the General Agreement on Tariffs and Trade (GATT).
V
Plaintiff contends that his sales of gold coins and gold and silver bullion should not be taxed because he did not have notice that these transactions were subject to sales tax. Plaintiff also contends that he was given misleading information by the Division of Taxation with respect to the taxability of these transactions and that, therefore, the Division of Taxation is estopped from collecting the tax.
Plaintiff contends that he did not have notice of the taxability of gold coins and gold bullion because the policy of the Division *135 of Taxation, as enunciated in the State Tax News, Vol. 3, No. 4 (August-September 1974), (1) omitted gold bullion and (2) was stated prior to 1975 when it became legal for United States citizens to own gold. Plaintiff assumed that the reference to gold coins was to numismatic coins.
Plaintiff testified that he first called the Division of Taxation sometime prior to December 1978. When he asked about the taxability of gold bullion he was told that it was taxable when converted to use or processed. When the Division of Taxation audit of his records began in 1980, he called the Division again and was told “that if it was converted to use that it was taxable.” He was told by the auditors that when his clients took physical possession of the metal, they were converting it to an investment use and it was taxable. Later, at a meeting with the Director of the Division of Taxation, he was told that the State had the right to tax gold bullion as tangible personal property.
Plaintiff was put on notice by the State Tax News, issued shortly before it became legal for United States citizens to own gold, that the policy of the Division was that sales of silver coins, silver bullion and gold coins are deemed sales of tangible personal property subject to the New Jersey sales tax. A telephone call to the Division inquiring about gold bullion resulted in a response that it was taxable if converted to use. This appears to be an answer that might have been given on the telephone in response to a question about gold bullion futures transactions, the words “converted to use” having been enacted as a part of the futures contract exemption in late 1977. The 1974 policy was that silver bullion was regarded as tangible personal property. It is logical to assume that this policy would also apply to gold bullion when ownership became legal. There would have been no reason for a telephonic response by the Division to the gold bullion question to be in terms of conversion to use unless the question pertained to the futures contract exemption.
*136 The Sales and Use Tax Act itself is notice to a taxpayer that retail sales of tangible personal property are taxable unless specifically exempted in the act. Plaintiff does not set forth facts which justify application of the doctrine of estoppel. The Division’s response with respect to gold bullion is undocumented as to the name of the person furnishing the information and the date furnished. The question was limited to gold bullion and did not include gold coins. It would be unreasonable for plaintiff to have relied on such sketchy information to conclude that he did not have to collect tax on sales of gold bullion and gold coins.
The equitable remedy of estoppel is not applied against a governmental agency to the same extent as against individuals or private corporations. A governmental agency will usually not be bound by the errors or omissions of its employees because of prevailing public interest. American Train. Serv. Inc. v. Veterans Adm’n., 434 F.Supp. 988, 1001 (D.N.J.1977). In tax cases estoppel has been held to be particularly inappropriate. Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311 (1951); N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 552, 350 A.2d 69 (App.Div.1975), aff’d o.b. 73 N.J. 180, 373 A.2d 652 (1977); Airwork Service Div. v. Taxation Div. Director, 2 N.J.Tax 329, 342-344 (Tax Ct.1981). I conclude that plaintiff has not established a sufficient basis to entitle him to application of the doctrine of estoppel.
Conclusion
The Sales and Use Tax Act taxes all retail sales of tangible personal property unless specifically exempted, and places the burden of proving nontaxability on either the person required to collect the tax or the purchaser. N.J.S.A. 54:32B-12(b). Spencer Gifts Inc. v. Taxation Div. Director, 3 N.J.Tax 482, 489 (Tax Ct.1981). Plaintiff has not met this burden.
I find that:
1. Sales of gold coins and gold and silver bullion purchased for their metal content are sales of tangible personal property *137 subject to tax under the New Jersey Sales and Use Tax Act unless specifically exempted by the act or proscribed by the United States Constitution or the General Agreement on Tariffs and Trade.
2. The subject gold coins and bullion are not exempt transactions under N.J.S.A. 54:32B-8.32 because they are not sold in fulfillment of a commodity futures contract.
3. Imposition of New Jersey sales tax on gold coins and gold and silver bullion does not violate the Supremacy, Monetary, or Foreign Commerce Clauses of the United States Constitution.
4. Plaintiff has not established that imposition of New Jersey sales tax on plaintiff’s sales of gold coins and gold and silver bullion violates the General Agreement on Tariffs and Trade (GATT).
5. The New Jersey Division of Taxation is not estopped from imposing and collecting sales tax on plaintiff’s sales of gold coins and gold and silver bullion.
The Clerk of the Tax Court is directed to enter judgment dismissing plaintiff’s declaratory judgment complaint.

This bill was introduced on July 31, 1980 but was the subject of a Governor’s veto and did not become law.

Effective September 11, 1980, § 8 was reorganized so that § 8(ff) (later § 8(gg)) became § 8.32.