[Civ. No. 67691. Second Dist., Div. One. July 28, 1983.]

KIEFFER W. McKEE, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY,
Defendant and Respondent.

COUNSEL

Hecker & Kenealy and James N. Kenealy, Jr., for Plaintiff and Appellant.

Breidenbach, Swainston, Yokaitis & Crispo, W. F. Rylaarsdam and Scott S. Thomas for Defendant and Respondent.

## OPINION

**HANSON (Thaxton), Acting P. J.**—Action for breach of an insurance contract. By amended complaint, plaintiff Kieffer W. McKee sought compensatory and punitive damages from his insurer, defendant State Farm Fire and Casualty Company (hereinafter State Farm), alleging breach of contract and bad faith dealing. Defendant sought summary judgment; plaintiff sought a partial summary judgment. The trial court awarded defendant summary judgment. Plaintiff has appealed; we affirm.

### I. THE FACTS

The facts are not in dispute. On or about May 24, 1976, plaintiff McKee bought a homeowner's policy from State Farm which included certain cov-

erage for personal property losses. The policy was renewed from year to year, and was in effect on April 3, 1979, when plaintiff's residence was burglarized. On or about March 27, 1978, plaintiff had acquired certain silver coins, two bags of United States silver dollars, half dollars, and quarters minted prior to 1965; plaintiff had paid $3,830 per bag, the price reflecting the value of the silver content but considerably more than the face value of the coins. At the time of the burglary, plaintiff claimed the value of the coins was $11,512.20.

Plaintiff's insurance policy, under coverage "B," insured up to $15,000 for loss by theft of unscheduled personal property. However, there was an exclusion in effect at the time of the burglary herein, declaring that "this company shall not be liable for loss in any one occurrence with respect to the following property for more than: (1) One hundred dollars in the aggregate on money, bullion, numismatic property and bank notes . . . ." Defendant insurer took the position that the exclusion constituted a valid limitation on its liability for plaintiff's loss, and offered its insured, plaintiff, $100 on April 20, 1979. This lawsuit followed.

## II. The Issue

The issue is the proper interpretation of the exclusion contained in defendant insurer's policy, and whether said exclusion applied to plaintiff's personal property loss. The issue of interpretation is peculiarly one of law, calling for exercise of the judicial function, construction of written language in a contract, the insurance policy.

■ Where no extrinsic evidence was presented in the trial court on the issue of the meaning of the contractual language, the appellate function is the same as that of the trial court, i.e., to arrive at a reasonable interpretation of the language, in keeping with applicable rules of construction; we are not bound by the trial court's ruling if it is erroneous, but may choose a different interpretation if one more reasonable presents itself. (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].)

## III. Applicable Rules of Construction

Plaintiff urges us on this appeal to require defendant insurer to meet the heavy burden of demonstrating that the exclusion upon which it relies to avoid liability to plaintiff is *only* susceptible of the meaning defendant attributes to it, rather than of alternative meanings offered by plaintiff. ■ It is true, as plaintiff asserts, that exclusions in insurance policies are narrowly rather than broadly, strictly rather than liberally, construed. (*Reserve In-*

*surance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].) ■ It is also true that if the language to be construed is ambiguous, " 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." (*Reserve, supra,* 30 Cal.3d at pp. 807-808.)

■ However, we are also mindful that, "[W]ords in an insurance policy are to be read in their plain and ordinary sense. [Citation.] Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms. . . ." (*Highlands Ins. Co.* v. *Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 175 [154 Cal.Rptr. 683]; and see Civ. Code, § 1638.) ■ We have concluded that defendant insurer is correct in maintaining the position that a common sense reading of the words contained in this particular exclusion, namely, "[m]oney, bullion, numismatic property and bank notes," compels the determination that plaintiff's silver coins fall squarely within some of the categories so enumerated, and therefore, the trial court's award of summary judgment to defendant insurer was correct.

## IV. PLAINTIFF'S CONTENTIONS

A. The silver coins were not "money" within the reasonable meaning of the exclusionary clause of the insurance policy, plaintiff asserts. Most dictionary definitions of "money" (including Black's Law Dict. (5th ed. 1979) p. 906, col. 2.) make reference to it as a "medium of exchange," something in circulation as part of the currency. Plaintiff contends that since his pre-1965 silver minted coins were an investment on his part, withdrawn from circulation, they were not "money" in the sense intended by the insurer. The argument is without merit. Plaintiff's silver coins are most reasonably regarded as "money," and whether kept from circulation by plaintiff or not, retain their monetary character. Limiting the reasonable meaning of "money" to only that which is actually circulating as part of the currency is not reasonable. Another dictionary definition of "money," Webster's New Dictionary of the English Language (1975), describes it as "*coin,* gold, silver, or other metal, stamped by public authority and used as the medium of exchange." We deem it reasonable to view silver coins such as those possessed by plaintiff as money to which the liability limitation would be applicable.

B. Plaintiff further contends that his silver coins do not constitute bullion, because definitions of "bullion" bespeak of uncoined rather than coined

metal. (Black's Law Dict. (5th ed. 1979); Webster's New Collegiate Dict. (1982).) We agree with plaintiff that it does not appear that his silver coins fall within the meaning of "bullion" as it is ordinarily defined.

C. Plaintiff further argues that his silver coins are not numismatic property, because they are not rare enough; that numismatics is the study of rare coins and objects, according to Colliers Encyclopedia, published in 1963. (See also, Webster's New Collegiate Dict. (1982), defining numismatics as "the study or collection of coins, medals, paper money, etc.") He relies on *De Biase* v. *Commercial Union Insurance Co. of N.Y.* (1967) 53 Misc.2d 45 [278 N.Y.S.2d 145], which considered an exclusionary clause which did not include the word "numismatic," and held that a coin collection was personal property but not money. Since *De Biase,* many policies containing a similar exclusion have added "numismatic property" to make it clear that no insurance is being provided for the loss of a coin collection. We are not persuaded that plaintiff's silver coins are rare enough not to be ordinary money but not rare enough to interest a numismatist. It appears reasonable to us that the silver coins would be regarded as "numismatic property" within the meaning of the exclusionary clause. Plaintiff's arguments about the application of the clause to his stolen personal property center upon defining that property by the *use* to which plaintiff was putting the property, rather than the *kind* of property it was. We think it infinitely more reasonable to presume that words descriptive of property ordinarily have reference to kind, rather than use. (See e.g., *Grassie* v. *Merrimack Mutual Fire Insurance Co.* (1972) 112 N.H. 143 [291 A.2d 254].)

D. Finally, plaintiff contends that the partial summary judgment he sought below should have been granted, pointing to the fact that after plaintiff's loss, defendant insurer rewrote this exclusion to read "money, bank notes, bullion, gold, other than gold ware, silver other than silverware, platinum, coins and medals." Defendant contends the alteration to the exclusion subsequent to plaintiff's claim is irrelevant to the issue of application of the exclusion as it then read to plaintiff's loss. Defendant cites Evidence Code section 1151, which provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event."

Defendant claims that evidence which demonstrates subsequent "remedial or precautionary measures" by an insurer, while not used in connection with negligence or culpable conduct, is, by analogy, inadmissible pursuant to this section. We agree that evidence of subsequent revisions of an exclusionary clause in an insurance policy should be inadmissible because it lacks

*relevance,* i.e., has no tendency to prove a material fact—is not probative on the issue of liability.

There are sound reasons for approving this approach. Public policy favors remedial action as furthering the public good; it is not to be discouraged, by in effect penalizing those taking remedial action with an unwarranted inference of liability. In addition, remedial action cannot logically be equated with liability, for there could be a number of reasons for pursuing it, to preclude litigation such as this, for example. Evidence Code section 1151 also could be construed as requiring exclusion on the ground that potential prejudice outweighed slight probative value, if evidence of subsequent revisions of policy language was offered.

In any event, as our discussion indicates, plaintiff's investment in silver coins was included within defendant insurer's exclusionary clause, and we find no error in the trial court's ruling.

### DISPOSITION

The judgment is affirmed.

Dalsimer, J., and Riley J.,* concurred.

A petition for a rehearing was denied August 22, 1983, and appellant's petition for a hearing by the Supreme Court was denied September 21, 1983.

---

*Assigned by the Chairperson of the Judicial Council.